## THE STATE v. CHAMBERS BUCKLEY and EARL BUCKLEY, Appellants.

Division Two, June 5, 1925.

1. **INSUFFICIENT EVIDENCE: Murder: Strong Suspicion.** Circumstances raising only a strong suspicion that defendants conspired with another to kill deceased, although it is conceded that deceased

State v. Buckley.

was murdered, are not sufficient to sustain a verdict finding defendants guilty of the murder.

2. **CIRCUMSTANTIAL EVIDENCE: Rule of Consistency: Conspiracy: Motive: Guilt of Principal.** Where the evidence to prove that defendants entered into a conspiracy with another to kill deceased is wholly circumstantial, in order to sustain a verdict finding them guilty of the murder the circumstances must not only tend to establish their guilt, but must point to their guilt so clearly as to exclude every reasonable hypothesis of their innocence. Even when motive is clearly shown, and the proof that defendants entered into a conspiracy with such other to kill deceased is sufficient to submit that question to the jury, a verdict finding defendants guilty cannot stand, if the evidence that such other actually killed deceased is insufficient.

3. ——: **Payment of Money to Conspirator: Consistent with Honesty.** There being sufficient evidence that defendants entered into a conspiracy with another to authorize the submission of that question to the jury, and motive having been established, but the proof that such other actually killed deceased being insufficient, the payment of money by one of the defendants to such other is not of itself of probative force of defendants' guilt of murder where it is just as reasonable to conclude that such payment was made in settlement of an obligation honestly incurred.

4. **EVIDENCE: Acts and Admissions of Co-conspirator.** A statement by the man with whom it is charged the defendants entered into a conspiracy to kill deceased, that he had met deceased and shot him three times, made to the witness some time after the murder of deceased and made out of the presence or hearing of defendants, is inadmissible against them, although there is sufficient proof that they and such other had entered into a conspiracy to kill deceased to take that question to the jury. Nor can defendants be held responsible for the fact that said alleged co-conspirator left the country after the murder or for the fact that he escaped after being later arrested and confined in jail, where there is no evidence that they had any part in his said acts.

5. ——: **Burden on the State: Insufficient if Unsubstantial.** The guilt of the accused must be established to the satisfaction of the jury beyond a reasonable doubt. He is not required to prove his innocence, but the State must prove beyond a reasonable doubt that he is guilty of the crime charged to him. If, taking every fact testified to by the witnesses for the State as true, defendants are guilty of nothing more than possessing feelings of ill-will towards deceased and a desire to have him killed and an expressed pleasure that he was killed, a verdict of murder against them cannot stand.

6. **INSUFFICIENT EVIDENCE**: Remand for New Trial. The evidence to establish defendants' guilt, being wholly circumstantial, was insufficient in this case to support a verdict convicting them of murder, and a demurrer thereto should have been sustained; but it does raise a strong suspicion that one or both of them are guilty, and experience making it manifest that when a conviction has once been obtained and the possible fear of the accused and the natural disinclination of witnesses to testify have been removed, valuable and convincing evidence often comes to light and is available upon a re-trial, it is *Held*, that the 'cause of justice will be served if the State is given opportunity to produce further evidence, and the order is, not that the judgment be simply reversed, but that it be reversed and the cause remanded, but with the admonition that if the case against defendants is again tried and no stronger evidence is produced than that under review the case should not be submitted to the jury.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Sections 993, pp. 528, n. 35, 529, n. 39; 1503, pp. 764, n. 54, 765, n. 57; 1590, pp. 778, n. 96, 779, n. 98: Homicide, 30 C. J., Sections 542, pp. 297, n. 41, 42; 298, n. 43; 559, p. 314, n. 43.

Appeal from Benton Circuit Court.—*Hon. Berry G. Thurman*, Judge.

REVERSED AND REMANDED.

*C. C. Barrett* and *Henry P. Lay* for appellants.

(1)   The trial court committed error in admitting the testimony of witness Mabary, that the alleged accomplice Estes after the commission of the crime, stated to the witness, Mabary, "I met him and fed him three," referring to Alfred Lutman, the deceased.   Statements made by an (alleged) accomplice, after the commission of the (alleged) crime, cannot be admitted in evidence against the defendants.   This, of course applied to all evidence of this character.   16 C. J. 656; State v. Forshee, 199 Mo. 145; State v. Frisby, 204 S. W. 3; State v. Hays, 249 S. W. 49.   (2)   Appellants insist that the trial court erred in refusing defendants' instructions in the nature of a demurrer to the evidence, requested both at the close of the State's case and at the conclusion of the

testimony.  The State's case, as shown by its instructions, was predicated upon the theory that Claude Estes killed Alfred Lutman; if the court will read the testimony carefully, it will find that there is no competent evidence that Estes killed Lutman; eliminate the incompetent testimony, and there is no evidence that Lutman was brought to his death by Estes.  Certainly, there is no legal evidence, upon the State's own theory, that the present defendants were instrumental in Lutman's death. We insist that the court apply the same rules of evidence, presumptions and rules which the court always applies in civil cases; we ask nothing more; certainly we are entitled to nothing less.

*Jesse W. Barrett,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for respondent.

(1)  Flight is a circumstance to be taken into consideration, when unexplained, in determining the guilt of an accused and in this case testimony of the escape and flight of Claude Estes was proper as a circumstance to be considered by the jury in determining his guilt of the murder of Lutman, he being accused of the actual killing, pursuant to a conspiracy entered into with appellants.  (2)  A conspiracy may be established wholly by circumstantial evidence, and the trial court has a large discretion in determining whether a conspiracy has been established sufficiently to admit evidence of statements made by the conspirators.  State v. Bersch, 276 Mo. 397; State v. Casto, 231 Mo. 398; State v. Hembree, 295 Mo. 1; State v. Samis, 296 Mo. 471.  Anything said or done by one of a number of conspirators, with respect to the purpose of the conspiracy, before a conspiracy has been finally concluded, is admissible in evidence against the others, whether said or done in the presence of the others or not.  State v. Bersch, 276 Mo. 397; State v. Bobbitt, 228 Mo. 252; State v. Fields, 234 Mo. 615; State v. Kolafa, 291 Mo. 340; State v. Samis, 296 Mo. 471; State v. Pfeiffer, 277 Mo. 202.  (3)  The

evidence was sufficient to take the case to the jury, and the court committed no error in overruling appellants' instruction in the nature of a demurrer to the evidence.

BLAIR, J.—Defendants were convicted of murder in the first degree for the killing of Alfred E. Lutman in Benton County. They were sentenced in accordance with the verdict to imprisonment for life in the State Penitentiary and have appealed.

As the main question in the case is the sufficiency of the evidence to sustain the verdict, a full understanding of the facts is necessary. Chambers Buckley is the father of his co-defendant, Earl Buckley. He and his family lived upon a farm adjoining the farm of deceased. The deceased lived alone upon a farm of several hundred acres and engaged extensively in stock raising. In July, 1922, he was missed from his usual haunts, and it began to be suspected that he might have been the victim of foul play. After a careful search of his farm by some of his neighbors, his badly decomposed body was found on July 14, 1922, in the brush on his own place about a half mile from the home of Chambers Buckley. It is not entirely clear just when deceased disappeared, but the most reliable evidence tended to show that he was last seen alive about June 14th, or about one month before his body was found.

In oral argument here counsel for defendants conceded that the proof of the *corpus delicti* was sufficient, that is, that the body found was that of Lutman and that his death was due to the criminal act of someone. However, it is vigorously contended that the evidence is entirely insufficient to sustain the finding of the jury that either or both of the defendants were guilty of killing the deceased, or of conspiring with another who actually fired the fatal shots. It is the theory of the State that one Claude Estes did the killing in pursuance of a conspiracy to that end with the defendants, who hired him to commit the murder. The evidence relied upon to es-

tablish such conspiracy and to prove the killing by Claude Estes was wholly circumstantial.

In his brief, as well as in oral argument, counsel for defendants agreed that the statement of facts made by the Attorney-General is substantially correct. Therefore, we may safely quote from such statement as follows:

"As furnishing a motive for the murder, it was shown that a deep grudge of long standing was held by appellants against Alfred Lutman; that appellants had often been heard to speak bitterly against deceased, threatening his life, saying that he ought to be dead; that he would be found dead with his head shot full of holes, and that when so found it was their opinion that he wouldn't have friends enough to bury him. Such talk came particularly from appellant Chambers Buckley. The language of Chambers Buckley, as shown by the testimony, was unusually wicked and vicious. He was heard to say that he would rather kill Alfred E. Lutman than to eat when he was hungry; that he would love to walk upon his bones, and similar statements of a vicious and wicked character were attributed to him. It was shown that appellant Earl Buckley, at different times, suggested to his comrades that they waylay the road and kill Lutman, and there was evidence that he went so far as to offer money for the killing. Such suggestions finally found lodgment in one Claude Estes, a young man in the neighborhood whose father had at one time had some difficulty with Mr. Lutman. After the passage of months through which these threats had been made, witnesses heard appellant Earl Buckley propose to Claude Estes that Claude do the actual killing, offering him money for the job.

"About the 14th of June, 1922, Claude Estes, carrying a 22-caliber rifle belonging to the appellant Chambers Buckley, and accompanied by Chambers Buckley, entered the latter's cornfield, where two girls named Minnie and Mary Farth, granddaughters of Chambers Buckley, were engaged in replanting corn. This was in

the afternoon, and Claude Estes was in a partial state of
intoxication. When Estes left the corn field he was seen
to go in the direction of Alfred Lutman's house and was
seen no more. After he left the corn field, the two girls,
either having finished their work or discontinuing it for
the day, went to the home of Chambers Buckley where
they lived, and in the evening of the same day, as they
testified, Claude Estes came back to the home of Cham-
bers Buckley, put up the gun in the house, and went out
on the porch where he had a talk with appellant Cham-
bers Buckley. At different times following this date
Earl Buckley and Claude Estes were seen together fre-
quently engaged in private conversation, and at one time
shortly thereafter Earl Buckley was seen to pass some
money to Estes. Soon after the money transaction,
Claude Estes left the neighborhood and was arrested in
another state and brought back to Benton County.

"After the body of Alfred Lutman had been found,
Chambers Buckley was heard to repeat the disparaging
things that he had theretofore said, and it was disclosed
by the evidence that when he went down and looked at the
body on the day it was found and upon observing its ad-
vanced state of decomposition, he was heard to say that
if the fellow who did it would keep his mouth shut and
just say no, there would be no way to ever prove who
committed the murder, and was heard to say further that
Lutman had only received his just desert."

In connection with the statement of the Attorney-
General concerning the ownership by Chambers Buckley
of a 22 rifle and its possession by Claude Estes, it should
be noted that the testimony tended to show that two bul-
let holes were found in the body of deceased. One pierced
the skull and the bones of the face, and the other entered
the body in the region of the heart. Witness Drennon
testified that he judged that the wound in the head was
made by a 38-caliber bullet. Presumably, the hole made
in the head would quite accurately indicate the size of the
bullet making such hole. After the body was found and
a number of people had been about and in the vicinity

of the body of the deceased, one witness testified that he found four discharged 22 rifle shells not far from the body.

One Arthur Allen, who seems to have lived at the Buckley house for a time prior to the killing, testified that defendant Earl Buckley offered to pay him if he would kill Lutman. He also testified that he heard Earl Buckley suggest to Claude Estes that he lure Lutman from his house and kill him; that he would give him twenty-five or thirty dollars. This witness afterwards told Earl Buckley he knew what he and Estes were talking about, and Earl said, "If you ever tell it, I will kill you." Witness afterwards spoke to Estes and said: " 'You was planning on killing Mr. Lutman, wasn't you?' He never answered me; just laughed at me and walked on."

After witness Allen left the Buckley place, Earl came over to Allen's place and accused him of being too intimate with his (Earl's) wife. Two or three days later Earl returned and told Allen he knew he was too intimate with his wife. Allen again denied it, and Earl said if he ever caught him talking to his wife he would kill them both. About the 6th or 7th of June Earl again hunted up Allen and told him he would give him until the next morning at sun-up to get out of the country, or he would kill him. Witness left the country on June 15th.

After June 14th Chambers Buckley and others were on Lutman's land for the purpose of cutting a bee tree. In answer to a suggestion that there was danger in cutting the tree, Chambers Buckley assured his companion that there was no danger. About a week later a witness, who was a son-in-law of Chambers Buckley, asked him why he said there was no danger in going on Lutman's land to cut the bee tree, and that Chambers said: "I know there is no danger; I seen it with my own eyes," and then took from his pocket three empty 38-caliber shells and exhibited them to the witness. The same witness testified he had heard Chambers say that Lutman might be found dead and the buzzards had picked his bones.

Witness John Walker testified to a similar statement by Chambers Buckley and also that Chambers said Lutman would "be found in thick brushy brush with his head shot full of bullet holes" and that he wouldn't have friends enough to bury him and he would be glad to dance on his grave.

A witness testified that after the 14th of June Claude Estes made the statement that he had met Lutman and "fed him three." The admission of this testimony is vigorously urged as constituting reversible error, it having been made after the termination of any alleged conspiracy and thus inadmissible against the defendants.

One Otis Sled testified to a conversation with Chambers Buckley relative to the probable date of Lutman's death and told Chambers that "Wes Babbitt says he saw him on the 18th of June;" that Chambers said, "Wes Babbitt lied, he never seen him on the 18th of June. . . . A rattle snake will warn you and a copper head won't; and the fellow that killed Alfred Lutman wouldn't be too good to kill you, if he knowed you had circumstantial evidence against him."

Oscar Estes, a half-brother of Claude Estes, testified to a conversation between Claude, who was drinking, and Earl Buckley, wherein Claude said: "Earl, you know what we have done. If it is found out on us, we will be in the penitentiary." And Earl said, "Hush up."

The specific reference to the testimony of witnesses which we have made, together with the quotation from the statement of facts made by the Attorney-General, are sufficient to outline the facts necessary to determine whether the evidence sustains the verdict. It should also be stated that the record shows that there was a prior trial in which the jury failed to agree.

After carefully considering all of the evidence, we are of the opinion that the proof is insufficient to support the verdict of guilt of murder returned against the defendants and that the trial court should have sustained the demurrer to the evidence.

It must be admitted that there are circumstances raising a suspicion—probably a strong suspicion—that the defendants conspired with Claude Estes to do away with the deceased. The evidence is wholly circumstantial. In that case the rule is that the circumstances shown must not only tend to establish guilt, but must point to the guilt of the person charged with the crime so clearly as to exclude every reasonable hypothesis of innocence. The existence of such circumstances must be inconsistent with the innocence of the accused.

A motive for the commission of the crime by defendants was shown in difficulties of long standing between them and the deceased. But apparently defendants were not the only persons living in deceased's neighborhood who had been in difficulty with him. They had threatened his life and made overtures with others to do away with him. They expressed gratification at his death. But all these things might be true and yet the crime might have been committed by another.

Assuming that the proof of a conspiracy between Claude Estes and the defendant was sufficient to authorize submission to the jury of that question, nevertheless the evidence that Estes actually killed the deceased is insufficient. The proof upon that point is that Estes, in a state of partial intoxication, was seen to enter the timber upon the deceased's premises on said June 14th, carrying a 22 rifle, with the declared purpose of hunting squirrels. The only proof as to the character of the wound in deceased's head is that it was caused by the entrance of a 38-caliber bullet. If deceased came to his death from a 38-caliber bullet, it is certain that Estes did not kill him with a bullet from the 22 rifle. It is not shown that Estes carried any firearm of 38-caliber or that he ever had in his possession a revolver or rifle of such caliber.

The payment of money to Estes by Earl Buckley might have been in payment for the killing of Lutman; but it is just as reasonable to say that such payment meant the settlement of an obligation honestly incurred.

State v. Buckley.

The fact that Claude Estes left the country soon after June 14th might be referable to some reason having no connection with Lutman's death. In any event, the facts that he then left and later, when he was arrested and confined in jail, that he escaped therefrom, were not acts for which defendants could be held responsible any more than his declarations could bind them after the alleged conspiracy terminated.

The guilt of one accused of crime must be shown to the satisfaction of the jury beyond a reasonable doubt. It is not enough that there be strong suspicion or even probability of guilt. The courts have thus declared the law ever since it became the rule that the accused is not required to prove his innocence and that the State must prove guilt beyond a reasonable doubt. Every fact testified to by witnesses offered by the State may be taken as true and yet the defendants may be guilty of nothing more than possessing feelings of hatred and ill-will toward deceased and a desire to have him killed and that they were highly pleased at his death.

The adjudicated cases fully support this view. In State v. Tracy, 284 Mo. 619, there had been a bank burglary about three-tenths of a mile from the spot where defendant was seen shortly afterwards with two companions having in their possession all the implements necessary to accomplish such a crime. When discovered one of the men fled and the others took to a boat. The defendant was positively identified as one of the three men discovered at the river. In disposing of the case and holding that the proof was insufficient to support the verdict of guilty, WILLIAMSON, J., said: "At the utmost, the evidence suffices merely to raise a suspicion—perhaps a strong suspicion—that appellant had some guilty connection with the burglary. But men are not to be convicted upon suspicion, but upon proof. All that the State proved might be entirely true and the appellant might yet be entirely innocent."

In State v. Ruckman; 253 Mo. 487, where the charge was arson and the proof tended to show a quick fire,

with, the aid of coal oil and other inflammable material, with a motive of over-insurance, and where the defendant was not shown to have been about his premises for several hours, but that he might have reached the same unobserved, WILLIAMS, C., said: "All the facts and circumstances shown by the State's evidence could exist and yet the defendant be innocent of any crime. The evidence as a whole leaves too much room for doubt and mistake and does not possess sufficient proof of guilt to authorize the State to deprive defendant of his liberty."

Recitals of facts and quotations from opinions in numerous other cases could be made, but we deem the rule to be well established. The variant facts do not justify such course on our part. The rule has been declared again and again. [State v. Adkins, 222 S. W. (Mo.) 431; State v. Singleton, 243 S. W. (Mo.) 147; State v. Lee, 272 Mo. 121; State v. Jones, 106 Mo. 302.]

We deem it unnecessary to notice any other assignments of error, as they are of a character not likely to occur in the event of another trial. If we were satisfied that all of the available evidence had been produced by the State, we doubtless should order the defendants to be discharged. However, experience has shown that when a conviction has once been obtained and any possible fear of the accused and natural disinclination of witness to testify have been removed, valuable and convincing evidence often comes to light and is available upon a retrial.

The circumstances here in evidence certainly raise a strong suspicion against one or both of the defendants and we think the cause of justice will be served by giving the State an opportunity to produce further proof, if, perchance, such has developed. We have no hesitancy in saying that, if the State concludes to try defendants again and the proof is then no stronger than in the trial here under review, the case should not be submitted to the jury.

Judgment reversed and cause remanded. All concur.