STATE of Missouri, Respondent,

v.

Louis KING, Appellant.

No. 53286.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Dennis J. Quillin, Sp. Asst. Atty. Gen., Clayton, for respondent.

W. Clifton Banta, Charleston, for appellant.

WELBORN, Commissioner.

Appeal from sentence on jury verdict of life imprisonment for murder in the first degree.

At approximately 7:00 A.M., March 31, 1967, L. I. Denton was shot and killed in the backyard of his residence in East Prairie, Missouri. Neighbors heard several shots fired and saw Mr. Denton running from the garage in the rear of the yard toward the house. He was struck by at least four bullets and fell before he reached the house. Denton was dead when neighbors and his wife, who had been in the house, ran to where he had fallen.

No one saw the person who fired the shots. The appellant, Louis King, lived in a two-room house at the rear of the Denton premises. He was fifty-five years of age and a brother of Mrs. Denton. Their mother had been Mr. Denton's housekeeper and King, except for a short time, had lived at the Denton place since he was a small boy. King mowed the Denton yard, kept the cars cleaned up and helped maintain the Denton property. He was provided the two-room house and given $5.00 a week spending money by Denton. King was a hunter and had three guns in his house "and shells all over the place in every drawer and everywhere * * *."

There was evidence that King and Denton had gotten along well, although some three years previously King did not want to do some work which Denton asked him to do. When Mrs. Denton remonstrated with him and told him: "You don't have to pay any house rent or grocery bill or light bill. He even gives you spending money * * * You might have to leave here," King replied, "Yes, and by God, if I do * * * I will get him before I leave here."

For some months prior to March, 1967, Denton had difficulty getting King to do work he asked him to do. The day before the shooting, Denton asked King to whitewash some trees. King refused, saying that the whitewash was killing the trees. Denton replied that they were his trees and he wanted the work done.

King took the Denton dog for a walk each morning. At 5:30 A.M. on March 31, Mrs. Denton heard someone enter the house and the dog was subsequently found in King's house.

After she had gone to her husband's side, Mrs. Denton went into King's house. She noticed that the upper screen of the front storm door had been removed and was against the wall in the living room. She did not see King in the house, but when she tried to open the bathroom door, someone held it against her. Mrs. Denton left the house and when law enforcement officers arrived she told them that she wanted her brother arrested for shooting her husband.

King was first seen following the shooting in the vicinity of a grocery store some 200 feet from his residence. He was walking around, indecisively, and returned toward his house where he was placed under arrest by the East Prairie city marshal. King had no weapon.

The Mississippi County sheriff arrived on the scene shortly thereafter. He entered the house, also observing the removed portion of the storm door. He found three spent cartridge shells on the floor near the door and three more on the couch. He found a high-powered rifle in a second room and a shotgun over a doorway. He also found a Remington automatic .22 caliber rifle in the bathroom of King's house. The .22 rifle and spent cartridges still had the smell of gunpowder.

At King's trial on a charge of murder in the first degree, four witnesses testified for the defendant to his good reputation. The defendant did not testify.

On this appeal, defendant's first contention is that the state's evidence did not establish beyond a reasonable doubt that appellant fired the shots which caused Denton's death. The rifle, bearing evidence of

recent firing, was identified as belonging to appellant. It was in the house occupied by him. Recently discharged shells were found in the house. Ballistics tests showed that pellets found in Denton's clothing after his death were from the rifle. Although there was no direct evidence that appellant was in the house at the time of the shooting, he was seen in the vicinity shortly thereafter.

Appellant argues that absence of evidence of motive and the appellant's behavior following the shooting destroy the effect of the evidence otherwise connecting appellant with the offense. As appellant states, motive has been frequently cited as an important evidentiary fact in homicide cases based on circumstantial evidence. See State v. Henke, 313 Mo. 615, 285 S.W. 392, 396[3]; State v. Hughes, 344 Mo. 116, 125 S.W.2d 66, 70[7]. However, motive is not an essential element of the crime of murder. "[T]he presence or absence of motive is an evidentiary circumstance to be given such weight by the jury as they consider it entitled to under all the circumstances." State v. Henderson, Mo.Sup., 301 S.W.2d 813, 816[1]. The jury was so instructed in this case. The circumstances were sufficient to permit the jury to conclude that defendant fired the fatal shots, even absent proof of motive. However, there was evidence from which motive might have been found by the jury. For several months, the deceased had had difficulty in getting appellant to do work which he requested. The previous day the two had specifically disagreed about the tree whitewashing work. Remonstrances with appellant previously had evoked a strong response, directed at the deceased. Although the disagreement about the whitewashing might have been trivial, appellant may well have considered it a test of will, resolvable only by resort to violence.

The appellant's behavior following the shooting was not so inconsistent with his guilt as to disprove the state's theory that he fired the fatal shots. The evidence did establish appellant's presence in the vicinity. When first seen, he was walking around, indecisively. His subsequent return to his place of residence was not so inconsistent with a finding of the appellant's participation as to render the evidence pointing to such fact insufficient. This, again, was a circumstance for the jury to consider.

The general rules for testing the sufficiency of circumstantial evidence, set out in the cases cited by appellant (State v. McGlathery, Mo.Sup., 412 S.W.2d 445, 447[1–3]; State v. Taylor, 347 Mo. 607, 148 S.W.2d 802, 805; State v. Henke, 313 Mo. 615, 285 S.W. 392, 395[1]; State v. Buckley, 309 Mo. 38, 274 S.W. 74, 76[3]; State v. Singleton, 294 Mo. 346, 243 S.W. 147, 151–152[1, 2]), are unquestionably applicable here. However, the facts in the two cases cited by appellant where the evidence, tested by such rules, was found insufficient (State v. Buckley, State v. Singleton, supra) were far different from those here involved. Each case such as this stands essentially on its particular facts. We consider the evidence here sufficient to support a finding by the jury, beyond a reasonable doubt, that appellant fired the shots.

Appellant next contends that the jury should have been instructed on second degree murder. The only charge submitted was murder in the first degree.

Although as appellant contends, the intentional killing of another by a deadly weapon gives rise to a presumption of murder in the second degree, such presumption does not preclude a first degree murder case, based upon wholly circumstantial evidence. When the circumstances show murder in the first degree and no lesser degree of homicide, the court is not required to instruct on lesser degrees. State v. Taylor, 347 Mo. 607, 148 S.W.2d 802, 805[5, 6]; State v. Holland, 354 Mo. 527, 189 S.W.2d 989, 997–999[8, 9]. Here the evidence showed that the shots were fired from within the defendant's house at

the victim in the yard, some distance away. The upper portion of the storm door had been removed. Some five or six shots were fired. Two struck the deceased in the upper portion of his body and one in the head. This evidence points to a killing by one lying in wait, the distinguishing element of murder in the first degree. The evidence showed only such an offense and the court was not required to instruct on second degree murder. State v. Taylor, State v. Holland, supra.

Appellant's final assignment of error is in the overruling of his objections to testimony of a ballistics expert. When Sheriff Simmons arrived at the scene, he found six spent shell casings in the vicinity of the front door of appellant's house. He took possession of these cartridges. When Mr. Denton's clothing was removed at the funeral home in the presence of the sheriff, two slugs were found between the body and the shirt. The sheriff, likewise, took custody of these objects. He placed the shells and the slugs in an envelope. Sometime in June, the sheriff delivered the envelope containing these objects, along with the .22 caliber rifle found at appellant's residence, to the State Highway Patrol Headquarters in Jefferson City. He delivered the objects to a lieutenant. The lieutenant "took me into the laboratory where the two girls were taking down the information and called Sergeant Kelly and told him I wanted a ballistics run on these (sic) gun and these shells." The sheriff said he did not see Trooper K. E. Miller, who performed the tests.

At the trial, the sheriff was unable to say that the six casings and spent bullets examined by Trooper Miller were the ones which he placed in the envelope, although he recognized the markings he had placed on the envelope.

Trooper Miller, the Highway Patrol ballistics expert, identified the objects offered in evidence as those examined by him by reason of markings which he placed on them at the laboratory. Trooper Miller testified that tests showed that the spent bullets which he examined had been fired from the appellant's rifle.

At the trial, appellant's counsel objected to the trooper's testimony as to the tests made by him on the grounds that the state had failed to show the necessary chain of custody to establish that the expended bullets examined by the trooper were those taken from Denton's body. The overruling of that objection and the admission of the trooper's testimony is here assigned as error. The claim is based upon the absence of any evidence to show that the objects examined by the trooper were those delivered by the sheriff to the patrol headquarters. Appellant contends that there is a break in the evidence of the chain of custody from the time that the sheriff delivered the objects to the lieutenant in the patrol headquarters until they came into Trooper Miller's custody.

■ Although the connecting evidence might have been stronger, we are of the opinion that the trial court did not err. The sheriff testified to the delivery of six .22 caliber shell casings and two spent pellets to the patrol laboratory. Although the sheriff stated that he did not see Trooper Miller, the trooper testified: "Sheriff Simmons requested that I test-fire the rifle and obtain test bullets and test cartridge cases and then compare these test bullets and test cartridge cases with the bullets and cartridge cases that he submitted to me, and I did that * * *." Defense counsel objected to the statement that Sheriff Simmons "submitted" the test objects to him because there was no evidence that Sheriff Simmons submitted any bullets to him. When the court inquired, "You mean you want to cross examine him as to whether that statement is true or not?", defendant's counsel replied: "Sheriff Simmons has already testified that he didn't." The motion to strike the trooper's testimony was overruled. Thus, there is in this record testimony by the trooper that he examined the objects "submitted" to him by

the sheriff. The trooper was able to identify the objects presented at the trial as those which he had examined previously. This was sufficient to provide the necessary chain of custody.

Appellant cites no case in support of his claim of error. He quotes from 29 Am. Jur.2d, Evidence, § 775, pp. 845–846, to the effect, as recognized by our cases (see State v. Moxley, 102 Mo. 374, 14 S.W. 969, 15 S.W. 556), that objects taken from a body and offered as exhibits must be proved to be the objects so removed. "Gaps in the continuity of possession of the specimen will not be filled in by any presumption as to the performance of official duty or that public records are correct." We do not rely upon any presumption in this case. The record supports the trial court's ruling. No effort was made to question the accuracy of the trooper's statement. It was in evidence and was sufficient to show that the objects examined were those submitted by the sheriff.

We find the matters of record, examined pursuant to Supreme Court Rule 28.02, V.A.M.R., free from error.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER and STORCKMAN, JJ., and BILLINGS, Special Judge, concur.

HENLEY, P. J., not sitting.