STATE v. RAYMOND SCHLIE, Appellant.—No. 37935.—169 S. W. (2d) 348.

Division Two, March 25, 1943.

*Roy McKittrick*, Attorney General, and *Gaylord Wilkins*, Assistant Attorney General, for respondent.

 **LEEDY, P. J.**—This is an appeal from a judgment of the Circuit Court of the City of St. Louis whereby defendant was convicted of robbery in the first degree, and sentenced to imprisonment in the penitentiary for a term of five years.

We have not been favored with a brief on the part of defendant. However, upon an examination of the record in the light of his motion for a new trial, which sets up numerous assignments of error, we have concluded the case must be remanded for another trial, unless, as defendant further charges, the state wholly failed to make a case for the jury. The latter will be first examined.

 In substance, the state's evidence was to the following effect: That on June 8, 1938, Miss Mary Marquard was clerking in her brother's dry goods store at 2807 North Sarah Street in the City of St. Louis; at about 11:00 o'clock that morning two men entered the store, and asked Miss Marquard to see a certain garment (a polo shirt); after examining the same, they left the store, saying they "might be back." They returned about 4:00 P. M., and Miss Marquard again waited on them; a garment was selected, and Miss Marquard, followed by the two customers, took it over near the cash register to be wrapped. She was handed a dollar bill, and when she started to open the cash register, she noticed "a movement of the defendant in front of the counter" and that "he carried a paper bag with something in it." As she opened the cash register, defendant said, "Leave it open." He had a revolver in his hand. Upon seeing the muzzle of the revolver, Miss Marquard complied. Whereupon defendant "put his hand in and took all the dollar bills out of the dollar bin and ran out." The amount taken was $16.00. She was positive in her identification of defendant. Defendant was not apprehended until December 28, 1940, on which date he confessed, both orally and in a written statement to the police, wherein he said he and his brother (his co-defendant) perpetrated the robbery. The defense was an alibi, which, it may be observed, was not supported by any testimony except his own. He further con-

tended his confession was not voluntary, but was obtained under duress. In the light of the foregoing it must be held the challenge of the sufficiency of the evidence is wholly without merit.

Defendant complains of an alleged unlawful separation of the jury. If there was such separation, it occurred on the evening of April 8, at an adjournment of the court during the trial, and not after the jury had retired to deliberate on a verdict; for the record shows the trial before the jury commenced on the morning of April 8, and it proceeded until the hour of adjournment, when "further proceedings herein" were "deferred until tomorrow morning." The next morning the trial was resumed, says the record, "and the testimony of the witnesses is further heard and concluded," and said case submitted. At the hearing on the motion for new trial, defendant offered testimony in support of his allegation charging unlawful separation of the jury. To rebut such showing as was made by the movant on this issue, the state called a single witness, a deputy sheriff, one of those in charge of the jury, whose testimony, we think, makes necessary the disposition above indicated. On direct examination, after identifying himself as stated above, he was asked this single question: "Q. During that night [of April 8] did you at any time allow any of those jurors to be away from the custody of yourself or the other deputy sheriff, to your knowledge? A. No, sir." On cross-examination it was developed that, upon adjournment for the day, the witness and five of the jurors left the other seven (who remained with another deputy), and went about gathering up automobiles belonging to the five jurors mentioned. Apparently the cars had been parked in the downtown area on the morning the trial commenced. The witness described the process in this way: "Some has got cars; one [deputy] goes with them, and the other deputy stays with the rest of them. . . . We would get in the closest car and pick up the others, and they would follow us back of the city hall and park them back there. Q. So that each man drove his own automobile? A. Each man drove his own automobile." The witness further testified that one of the five was manager of a large downtown hotel; and wanted his radio; that they went to his hotel, and all of them went upstairs and waited in the hall outside the manager's quarters while "he [the manager] went in and said something to his wife and got his radio and come out with the radio"; that he did not "speak to any bellhops or anyone else", except his wife, who "was the only one he was in contact with while I was with him." He said the job of collecting all the cars took forty-five minutes. He further testified, as follows:

"Q. Did you make any other stops? A. Well, we made several stops to pick up the cars at different spots and bring them in here.

"Q. Did you stop at the Grand Opera buffet?

"A. Yes, we had a car at Broadway and Market, that market across the street from the Grand Opera buffet.

"Q. Did you stop there? A. Yes, we stopped there, I guess, about five minutes, ten minutes.

"BY THE COURT: Where?

"BY THE WITNESS: A parking lot across from the Grand Opera.

"BY THE COURT: You didn't stop in the buffet? A. No, we didn't stop in the buffet.

"BY THE COURT: Didn't go in there?

"A. Just talked to a fellow on the outside *while this fellow got his car.*" (Italics ours.)

Section 4071, R. S. '39 [Mo. R. S. A., sec. 4071], insofar as relevant, provides as follows: "With the consent · of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases; . . . " It has been held under this and cognate sections that the mere physical separation of the jurors into different rooms for sleeping purposes is not a separation within the meaning of the statute, where done in the case of necessity and under proper surveillance. But in the case at bar there was something more than mere physical separation of the five jurors from their fellows. In the process of collecting the several cars scattered throughout the downtown section, and bringing them to a central point, we understand · the .entire group went first to the car in closest proximity to the court building, and there the owner of that car left the group and got into and drove his own car, and followed what might be called the pilot, or deputy sheriff's, car. This process was repeated until the fifth car had joined the procession. The ·evidence indicates that at least one of the group of five, departed from the others, and was gone five or ten minutes at the parking station at Broadway and Market, to say nothing of the fact that the others conversed with "a fellow on the outside," pending the return of that one juror. Under repeated and uniform holdings of this court, the statute means that a separation in violation of its terms (that is, during the progress of the trial and before retirement for consideration of the verdict) constitutes a ground for a new trial unless it be shown affirmatively by the state that the jurors were not subjected to improper influence [State v. Orrick, 106 Mo. 111, 17 S. W. 176; State v. Shawley, 334 Mo. 352, 67'S. W. (2d) 74 (collation and exhaustive review of the authorities); State v. McGee, 336 Mo. 1082, 83 S. W. (2d) 98; State v. Dodson, 338 Mo. 846, 92 S. W. (2d) 614; State v. Arnett, 338 Mo. 907, 92 S. W. (2d) 897; State v. Westmoreland (Mo.), 126 S. W. (2d) 202.] We have summarized the entire evidence on the part of the state, from which it conclusively appears that the state wholly failed to sustain the burden thus cast on it. In the absence of such a showing, we think the court erred in holding,

in effect, that the defendant had not made a *prima facie* case for a new trial.

The other errors assigned being of such nature that they are not likely to recur upon another trial, will not be noticed. For the error noted, the judgment is reversed, and the cause remanded. All concur.