STATE OF MISSOURI, Respondent, v. CLAUDE JONES, Appellant, No. 43400—255 S. W. (2d) 801.

Division Two, March 9, 1953.

*Lon J. Levvis, Latney Barnes* and *Barnes & Barnes* for appellant.

*J. E. Taylor,* Attorney General, and *Robert R. Welborn,* Assistant Attorney General, for respondent.

BOHLING, C.—Claude Jones was charged with having committed a burglary in the second degree and larceny in Audrain County, Missouri. The larceny charge was dismissed at the close of the State's case because of a defect in the information with respect to said charge. The jury found defendant guilty of the burglary and assessed his punishment at two years' imprisonment. §§ 560.045, 560.095, RSMo 1949. Several of the points in defendant's brief go to the ultimate issue that the State failed to connect him with the offense. Other points briefed include charges that the sheriff, who was a witness, and a juror were guilty of misconduct and also misconduct on the part of the prosecuting attorney.

On Saturday, September 2, 1950, the dwelling house of Cecil Fisher was entered and a General Electric refrigerator and a Magic Chef cook stove, valued at $250 and $100, respectively, were burglariously stolen. An Argyle electric washing machine, on the back porch, was also stolen. A window of the Fisher dwelling had been broken to effect an entrance. These facts are not disputed.

Approximately seven miles west of Mexico, Missouri, on Highway 22, an east-west concrete road, is a small settlement known as Thompson. Near and west of Thompson are two gravel roads extending north from Highway 22. The first is a minor gravel road a little over ¼ mile west of Thompson and the second is Route E, a county farm to market gravel highway, about 1¼ miles west of Thompson. An east-west dirt road runs practically parallel with and about ¼ mile north of Highway 22 and connects the two gravel roads. About ⅕

mile west of this minor gravel north road and on the north side of the dirt road is the Fisher dwelling, a short distance west thereof is the Daniel school building and at the northeast corner of the intersection of the dirt road with Route E is a two-room house. Defendant at one time occupied this two-room house and it is designated as the Jones house. The Jones house and the Fisher dwelling were situated on the farm of Mr. and Mrs. David A. Harwood, Sr., the parents of Mrs. Fisher.

Cecil Fisher worked for the A. P. Green Firebrick Company in Mexico. About August 20, 1950, Mr. and Mrs. Fisher took a temporary residence with his parents, who were not well, in Mexico. The Fishers were at their home on Thursday, August 31, 1950, and at that time locked the house with their household effects therein.

Defendant, who had lived in the two-room house on the Harwood farm for several months, paying rent to Mrs. Harwood, moved to the Dunne trailer camp at Mexico about three weeks prior to the burglary here involved; that is, on or before August 15, 1950. He had an understanding he could return and harvest his garden.

Defendant owned a 1948 Dodge pickup truck. About two months prior to the burglary defendant purchased a set of Firestone tires to replace tires stolen from his truck.

Mr. Fisher told defendant he had moved when defendant, who also worked at the A. P. Green plant, asked him, about two weeks prior to the burglary, if he had moved.

Over the Labor Day week end defendant went off duty at the plant at 1:00 p.m. Saturday, September 2, and was to return on the 3:30 p.m. shift Monday, September 4, 1950.

There was testimony that around midnight Friday it started to rain; that it was drizzling on Saturday and on Sunday the sun was shining; and that if the articles had been taken prior to the rain, the rain would have washed out the automobile tire tracks hereinafter mentioned.

The burglary and larceny was discovered about 1:00 p.m. Sunday, September 3, and soon thereafter Sheriff Ross Vance of Audrain county and Sgt. Roy F. Dix, of the State Highway Patrol, as well as the Fishers and others arrived and investigated the situation.

The rain had made the soil and dirt road muddy. There were fresh Firestone truck tire tracks leading into, turning around [803] and coming out of the yard at the two-room Jones house at the northeast corner of the intersection of Route E and the dirt road. Upon leaving the Jones yard, the truck had made a sharp turn to the left or east onto the dirt road. These tracks were readily followed continuously east on the dirt road, into the Fisher yard, and up to the Fisher kitchen porch. The truck had backed up to the kitchen porch, heading east and south. The tire treads were plainly visible around the porch where the grass had been worn away. One could

see where heavy objects had been "scooted" across the porch to where the truck had been parked. Then, the tire tracks proceeded back out of the Fisher yard, onto and westwardly along the dirt road. The road had been freshly graded in the vicinity of the Daniel school, and just west of the school the tracks showed that the front end of the truck had gone off toward the ditch and its forward progress had stopped in the mud. The truck had backed 40 or 50 feet, over into another rut, and then resumed going west and turned north at gravel Route E, where the tracks ceased to show on the gravel.

Attempts were made to secure finger prints at the Fisher home and casts of the tire tracks along the dirt road but they found no finger prints and the casts, which did not "form up good," had been misplaced.

Sheriff Vance and Sgt. Dix had had experience with impressions made by tires and they identified the tire tracks in question as having been made by Firestone truck tires, the same kind of tire defendant had on his Dodge truck. Sheriff Vance testified that in most places there were four fresh tire tracks distinctly visible in the mud of the dirt road; two made by the rear tires while the truck was traveling east and two made by the rear tires while the truck was traveling west, and these tracks had not been overridden by any other tracks. Sgt. Dix also testified that the tracks had not been destroyed by any others. Cecil Fisher testified that the vehicle made a rut in some places close to 4 inches deep and in other places just a track on the muddy road and that there were no other tracks there.

Sheriff Vance arrested defendant about 3:00 p.m. Monday at the A. P. Green plant. Defendant talked to Sheriff Vance, Sgt. Dix and Farley McGee, employment manager at the A. P. Green plant. Each testified that defendant first said he had not been at Pete Wilson's home; that he had gone fishing on the Chariton river between Moberly and Paris, Missouri, on Saturday, September 2. The Chariton river is not located between Moberly and Paris. Defendant also stated he had gone to his former house to get some vegetables out of his garden for the fishing trip; that he drove down the dirt road, which was muddy, to get one of the Harwood boys to go with him; that he turned around in front of the Fisher house and drove back to Route E, and that was the reason the imprints of the tread of his truck tires were out there. Later, defendant stated he was at Pete Wilson's; that he arrived there Sunday after quitting fishing; that the refrigerator and stove were on Wilson's back porch and, at Wilson's request, he helped move them into the kitchen; that he was sure the articles had come from the Fisher home; that Wilson told him he, defendant, might be in trouble because the man who sold the articles to him, Wilson, had the same type of tires on his truck

that defendant had on his. Sheriff Vance stated defendant told him he left Wilson's "right away," but Wilson testified defendant left Monday, after staying all day Sunday.

Sheriff Vance recovered the stolen articles at Wilson's. He testified that a truck had backed up to Wilson's porch and the imprint of the tires of the truck were the same as those in the mud road and the Jones and Fisher yards.

Pete Wilson, called by the State, testified that he lived near Philadelphia, Marion County, Missouri; that he first saw the articles Sunday morning in a Ford three quarter ton pickup truck at the junction of Route C and Highway 56, about 2 miles west of Palmyra; that defendant was not present; that the man in possession said, giving reasons, he would sell at a sacrifice if he could dispose of the articles that day; that he did not know the man and had never seen him since; that he paid $100 cash for [804] the articles and the man delivered the articles to his back porch; that it was "soft" where the truck backed up; that defendant arrived about 10 or 15 minutes after the man left his, witness's home, that is, between 8:00 and 9:00 a.m. Sunday morning, and that defendant helped him place the refrigerator and stove in his kitchen and left there Monday. Wilson testified that defendant wanted to know if the articles were "hot"; that he told defendant he thought not; that defendant had just shown him the tires on his truck and he also told defendant that "the tire prints where the truck backed up to the porch are just like the ones you have got on your truck. You had better hope it is not hot because you might have some explaining to do. It is the same kind of tire tread you have got."

Defendant invokes the rule that where the State relies upon circumstantial evidence to establish defendant's guilt, the facts and circumstances relied upon by the State must be consistent with each other and with the hypothesis of defendant's guilt, and inconsistent with his innocence, and every other reasonable hypothesis except that of guilt. State v. Murphy, 356 Mo. 110, 201 S. W. 2d 280, 282; State v. Pritchett, 327 Mo. 1143, 39 S. W. 2d 794, 797; State v. Perkins, Mo., 18 S. W. 2d 6, 7[2]; State v. Missey, 361 Mo. 393, 234 S. W. 2d 777, 781[6]; State v. Richardson, Mo., 36 S. W. 2d 944, 946; 23 C. J. S. 149, § 907, c. Evidence raising a suspicion or probability of defendant's guilt is not sufficient. State v. Murphy, supra; State v. Pritchett, supra; State v. Richardson, supra; State v. Buckley, 309 Mo. 38, 274 S. W. 74, 76|3].

In passing on the sufficiency of the evidence the substantial testimony and every reasonable inference therefrom favorable to the verdict of the jury, is taken as true, as appellate courts do not weigh the evidence; and where the evidence thus supports the verdict of the jury, it is sufficient. State v. Murphy, supra; State v. Missey, 361 Mo. 393, 234 S. W. 2d 777[3, 4]; State v. Harmon, Mo., 243 S. W. 2d

326, 331[7]; State v. Bayless, 362 Mo. 109, 240 S. W. 2d 114, 119[5, 6]; State v. Harris, 324 Mo. 223, 22 S. W. 2d 802, 806[2, 3].

In the instant case defendant, according to his own statements, was at the house at the northeast corner of Route E and the dirt road on Saturday after work and he drove down to the Fisher house, leaving the tracks of his automobile on the muddy road. The tracks of the automobile were plainly visible in the mud and were traced from the time his truck entered the Jones yard at the intersection, turned around and proceeded eastward on the dirt road and into the Fisher yard, where it backed up to the porch at the kitchen door, and thereafter as it proceeded out of the Fisher yard to the dirt road and thence west on the dirt road to the intersection where it turned north on the gravel of Route E. Under the evidence favorable to the State a jury could find that defendant's truck was the only truck so driven on this muddy road after the rain on Friday night and prior to the time the officers made their investigation on Sunday, and was the truck used in the commission of the burglary and the transportation of the stolen articles to Pete Wilson's home. There is more to the State's case than the mere fact that the tracks involved were of the same kind and size made by the tires on defendant's truck. State v. Ashcraft, 342 Mo. 608, 116 S. W. 2d 128; State v. Reed, 89 Mo. 168, 170(1), 1 S. W. 225(1); State v. Hall, Mo., 231 S. W. 1001, 1004[9].

▮ The State was not bound by the testimony of its witness Wilson because, for one reason, there was other evidence from which the jury could find the material facts contrary to his testimony. The credibility, weight, effect and value of the testimony of a witness is for the jury, which may believe all, or none, or any part of a witness's testimony and find the facts in accord with the most credible evidence adduced. State v. Harris, 324 Mo. 223, 22 S. W. 2d 802, 806[4]; State v. Loges, 339 Mo. 862, 98 S. W. 2d 564, 567[3]; State v. Carey, 313 Mo. 436, 282 S. W. 22, 25[5]. This rule is appropriate in criminal cases where the representative of the State offers the available witnesses to aid the jury in determining [805] the true facts notwithstanding the testimony of given witnesses may be inconsistent with the contentions of the State. State v. Souva, 234 Mo. 566, 570, 137 S. W. 873; State v. Guilfoyle, 109 Conn. 124, 145 A. 761, 765[1-3]; O'Neil v. State, 237 Wis. 391, 296 N. W. 96, 99.

▮ Defendant also contends he was entitled to his discharge upon the opening statement of the prosecuting attorney, claiming the prosecutor's statement of the State's evidence was insufficient. § 546.-070, RSMo 1949; State v. Loeb, Mo., 190 S. W. 299, 303[1]; Wonderly v. Little & Hays Inv. Co., Mo. App., 184 S. W. 1188, 1189[1]; McGuire v. United States, 152 F. 2d 577, 580. The facts stated and the reasonable inferences favorable to the cause of action are to be accepted as true. Best v. District of Columbia, 291 U. S. 411, 415, 416, 54 S. Ct. 487, 78 L. Ed. 882. The prosecuting attorney

was not as definite in his statement as was the proof adduced; but on the point at issue he narrated how the tire tracks disclosed that the truck had been driven from the Jones house to the dirt road, to the Fisher kitchen porch, then back to the dirt road and to where it turned north on Route E, et cetera. He made no admissions or statements from which it followed that the proof would not make a submissible case. The opening statement, when aided by the inferences to be deduced therefrom, was sufficient under the authorities. Best v. District of Columbia, supra; McGuire v. United States, supra; Rose v. United States, 149 F. 2d 755, 758[10]; 53 Am. Jur. 303, §§ 373-381.

After the close of the evidence in the case and while the court and the attorneys were preparing the instructions, one of the counsel for defendant stepped into the hall and observed Sheriff Vance and a juror talking. The sheriff was relating to the juror his experiences in connection with some burglary, but the attorney did not understand what burglary was being discussed. Defendant's attorneys promptly made a record, claiming the case was a close one on the facts and misconduct on the part of the sheriff, who was a witness, and the juror called for a mistrial. The court was concerned over the incident and stated he was accepting the attorney's statement as though it were given under oath. In our view of the law, we need not detail the discussion of record between the court, counsel for the State and counsel for the defendant. The discussion closed on the supposition the matter might best be presented in connection with a motion for new trial, and the court refused to declare a mistrial at that time. The issue was preserved in defendant's motion for new trial and is renewed here. There was, however, no additional evidence adduced on the issue by either party in connection with the motion for new trial.

Sheriff Vance signed the complaint, was one of the main witnesses for the State, and gave material testimony against the defendant. The witnesses in the case were placed under the rule, but the sheriff was not excluded from the courtroom. The jury, the parties consenting, had been permitted to separate.

It is the policy of the law to secure to an accused a fair and impartial trial and general rules and statutes exist therefor.

Section 546.230, RSMo 1949, so far as material provides: "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate * *; but when the jurors are permitted to separate, * * and at each adjournment the court must admonish them that it is their duty not to converse among themselves, nor to suffer others to converse with them or in their hearing on any subject connected with the trial, or to form or express any opinion thereon, until the case is finally submitted to them."

Section 546.240, Id., provides, among other things, that when the jury retires to deliberate upon its verdict, they are to be in charge

of an officer, who is to keep them together and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court or to ask whether they have agreed upon a verdict.

Section 547.020, Id., provides: "The court may grant a new trial for the following causes, or any of them:  *  *  (2)  When the jury has been separated [806] without leave of the court, after retiring to deliberate upon their verdict, or has been guilty of misconduct tending to prevent a fair and due consideration of the case  *  *."

We have said, since the enactment of the above statutes, especially the latter two, that if the separation or misconduct of the jury takes place during the progress of a felony trial, the verdict will be set aside, unless the State affirmatively shows that the jurors were not subject to improper influences; and that if the separation or misconduct occurs after the retirement of the jury for deliberation and prior to reaching a verdict, defendant is entitled to a new trial even though it be established that defendant was not actually prejudiced. State v. Dodson, 338 Mo. 846, 92 S. W. 2d 614, 615[1, 3]; State v. Shawley, 334 Mo. 352, 67 S. W. 2d 74, 88[30]; State v. McGee, 336 Mo. 1082, 83 S. W. 2d 98, 102.

"Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden and invalidate the verdict, at least unless their harmlessness is made to appear." Mattox v. United States, 146 U. S. 140, 150, 13 S. Ct. 50, 53, 36 L. Ed. 917, 921; Sunderland v. United States, 19 F. 2d 202, 211[11]; Pitchford v. Commonwealth, 135 Va. 654, 115 S. E. 707, 711(c); Leith v. State, 206 Ala. 439, 90 So. 687, 691[5]; 23 C. J. S. 1025, nn. 41-43; 53 Am. Jur. p. 50, n. 9, p. 651, nn. 9-13; Beale, Cr. Pl. & Pr. 279, § 251. The principle applying to the separation of a jury has been applied to the misconduct of a jury. State v. Malone, 333 Mo. 594, 62 S. W. 2d 909, 915[10].

In State v. Ferguson, 353 Mo. 46, 182 S. W. 2d 38, 42[12], the sheriff took the jurors to see a humorous love story at a picture show. No issue was presented with respect to the sheriff being a witness in that case. The conduct was considered improper and no more to be condoned than the jury attending any public gathering, citing State v. Dodson, supra; but there the State discharged its burden of establishing that no prejudice had resulted upon a showing that no one communicated with or had any contact with any member of the jury panel. See also State v. Hayes, 323 Mo. 578, 19 S. W. 2d 883, 887[5]; State v. Tarwater, 293 Mo. 273, 239 S. W. 480, 485[13]. In State v. Schlie, 350 Mo. 924, 169 S. W. 2d 348, 349[4], the testimony of the deputy sheriff was held not to sustain the State's burden of affirmatively showing "that the jurors were not subject to improper influence."

In the instant case the State made no showing whatsoever. Under the authorities the conduct of the sheriff, who was a witness, and the

juror was improper. There is naught in this record to overcome a presumption of prejudice to defendant.

We have examined the other matters mentioned in defendant's brief, only one of which is developed under his points and authorities. They are of a nature that need not be developed as they do not establish prejudicial error under the record. We perceive no occasion for several of them to recur upon a retrial.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.