STATE of Missouri, Respondent,

v.

Charles TAYLOR, Jr., Appellant.

No. 46784.

Supreme Court of Missouri,

Division No. 2.

June 8, 1959.

James J. Rankin, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

STORCKMAN, Presiding Judge.

The defendant Charles Taylor, Jr., was charged by indictment, jointly with Fred Douglas Williams and Earl Ray, with an assault upon Mrs. Ernestine Primus with intent to kill with malice and with prior convictions of felonies. Defendant Taylor was granted a severance and upon a separate trial was found guilty as charged, including prior convictions, and the jury fixed his punishment at imprisonment in the State Penitentiary for life. The defendant's motion for new trial was overruled and he has appealed.

At about 12:30 a. m., on February 3, 1957, Mrs. Primus was walking toward her home on 22d Street, between Carr and Biddle, in St. Louis, when she saw three men in a Mercury automobile, cream colored with a dark top. One of the men got out of the automobile and accosted her. He told her that she was looking at the point of a loaded pistol, but she did not see the gun. When the man commanded her to get into the car, she started to run but fell to the sidewalk. As she got up he again told her to "Get in the car" and hit her with the gun which discharged; the bullet struck her, lodging in her neck. When she screamed and exclaimed "I am shot", the man let her go; she ran to her home and was hospitalized. She had never seen any of the men before and did not see them well enough to identify or describe them.

Thereafter, at about 4 a. m., in National City, Illinois, about three miles from St. Louis, police officers arrested three colored men riding in a two-toned Mercury auto-mobile, the bottom part of the car was cream colored and the top dark. The defendant was one of the men and his companions were Fred Douglas Williams and Earl Ray. A fully loaded .32 caliber revolver, thrown from the automobile before the arrest, was recovered by the police officers, together with three other live cartridges found on the floor of the Mercury automobile. Tests made with the weapon tended to prove that it was the gun which fired the bullet removed from Mrs. Primus' neck.

There was abundant evidence to prove the commission of an assault upon the person of Mrs. Ernestine Primus with intent to kill with malice. The appellant contends, however, that "there was no evidence whatsoever that the gun was in the possession of defendant, or was used by him, at the time of the wounding of Ernestine Primus." While the defendant did not take the stand, a transcript of his testimony in another case tended to establish that he got the gun at about 6 p. m. on the Saturday night in question "in pawn" from another player in a crap game; that he took the gun with him and "still had it" at the time he picked up the girl, Shirley Riley, and at the time the police hailed his automobile in National City; and that he threw the gun from the car into a muddy field in order to avoid being charged with having a concealed weapon. Johnny Day testified that he saw the defendant with a brown-handled revolver sticking from his belt similar to the gun in evidence at a party on this Saturday night. Shirley Riley testified that she saw the defendant with the pistol, Exhibit No. I, in his possession on February 3d between 1 a. m. and 1:30 a. m. Lieutenant Frank Ruff, an expert in the identification of firearms, testified that the spent bullet removed from Mrs. Primus' neck was fired from the revolver in evidence, State's Exhibit No. I. The defendant contends that this evidence does nothing more than raise a suspicion or a probability of guilt and is insufficient to sustain his conviction.

The defendant correctly contends that where the state relies upon circumstantial evidence to establish the guilt of the accused, the facts and circumstances relied upon must be consistent with each other and with the hypothesis of defendant's guilt, and inconsistent with his innocence, and every other reasonable hypothesis except that of guilt. State v. Jones, 363 Mo. 998, 255 S.W.2d 801, 804 [1]; State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282 [2].

However, in passing on the sufficiency of the evidence to support a verdict of guilty, even in cases where the evidence is wholly circumstantial, all the substantial testimony tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged. State v. Jones, 363 Mo. 998, 255 S.W.2d 801, 804 [2]; State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282 [3]; State v. Harmon, Mo., 243 S.W.2d 326, 331 [7].

Apart from other supporting evidence, the defendant's admissions made in another case that he took the assault gun with him from the crap game and that he "still had it" at the time he picked up Shirley Riley and when he was hailed by the police in National City would be sufficient. The evidence permits no reasonable inference other than that defendant had possession of the gun at the time it was fired and the assault was committed on Mrs. Primus; it was sufficient to establish defendant's criminal agency and the trial court did not err in so ruling. State v. Harmon, supra; State v. Harris, 324 Mo. 223, 22 S.W.2d 802.

The appellant next contends that the court erred in permitting Shirley Riley to testify that she saw defendant after the alleged attack on Mrs. Primus in possession of the assault gun and in permitting a court reporter, Edward B. Utrip, to testify that the testimony of Taylor, a transcript of which he was identifying, was reported by him in a criminal division of the circuit court in a case in which Taylor was the defendant. The defendant claims that this testimony permitted the jury to infer that Taylor had committed a crime against Shirley Riley for which he was previously tried. He contends that the evidence of which he complains was not properly related to the cause on trial and violates the defendant's right to be tried for the offense for which he was indicted, citing State v. Reese, 364 Mo. 1221, 274 S.W.2d 304; State v. Spinks, 344 Mo. 105, 125 S.W.2d 60; State v. Buxton, 324 Mo. 78, 22 S.W.2d 635; and State v. Martin, 74 Mo. 547.

Proof of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to establish defendant's guilt of the offense for which he is on trial. State v. Dees, Mo., 276 S.W. 2d 201, 207 [15]. There are well-recognized exceptions to the general rule of exclusion, one of which is that evidence of other crimes is competent to prove the specific crime charged when it tends to establish the identity of the person charged with the commission of the crime on trial. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307; State v. Thompson, Mo., 280 S.W.2d 838, 841–842 [7].

Defendant's connection with the crime, or his identity, was one of the principal issues in the case; that is, whether he was the one who had possession of the gun and used it at the time Mrs. Primus was wounded. The testimony of Shirley Riley that she saw the assault weapon in the possession of the defendant within an hour after the assault, the selected questions and answers from the transcript of defendant's testimony in the other case, and the reluctant testimony of Johnny Day that he saw a similar gun in the defendant's possession before the assault, were all competent as tending to establish the identity of the defendant Taylor as the perpetrator of the assault upon Mrs. Primus. State v. Thompson, supra, State v. Dees, supra.

Another facet of the same problem is the testimony given by Mr. Utrip during

his identification of the transcript of Taylor's testimony. In answer to a question by the state, the witness testified that Division No. 10 of the Circuit Court was a criminal division. After the answer was given, defendant's counsel, out of the hearing of the jury, objected to the question as "suggesting before this jury here the fact that this defendant has been through another criminal trial". The objection was sustained but the defendant's request for a mistrial was denied. Thereafter the witness, in describing the exhibit, voluntarily stated that it was "a transcript of testimony of Charles Taylor, Jr., defendant in that case." After this statement was made the defendant, out of the hearing of the jury, objected and moved for a mistrial, which motion was denied. The defendant did not request that the jury be instructed to disregard the testimony or that an admonition be given.

The situation in the instant case is not comparable to that of State v. Reese, supra, in which this court held that it was reversible error to admit in evidence what appeared to be a complete description of another holdup perpetrated by the defendant Reese later that evening and the court stated, 274 S.W.2d loc. cit. 307 [2], that "proof of the fact of defendant's possession of the Luger when arrested later that evening did not necessitate the inclusion of the further showing with respect to the details of the subsequent crime in which it was used by defendant." In the case at bar the testimony of the witnesses and the selected portions of the transcript of Taylor's testimony were discreetly limited to showing his possession of the assault weapon during the night and hence at the time Mrs. Primus was assaulted. This evidence tended to prove that it was the defendant who committed the criminal act and it was not objectionable if it also tended to prove, or permit an inference, that the defendant was charged with the commission of another criminal act. State v. Dees, supra. The testimony of the court reporter that Taylor's testimony was given in a criminal division of the circuit court and that Taylor was the defendant in the case on trial was probably unnecessary for identification of the transcript and might well have been omitted. However, it appears from the record that the reporter's testimony did not add any new element to the evidence or the inferences that the jury might make from the evidence properly before it.

█ The whole record indicates careful attention on the part of the trial court to the right of the defendant to a fair trial. The declaration of a mistrial in these circumstances is largely within the discretion of the trial court, and it does not appear from the record that the court abused its discretion in failing to declare a mistrial. State v. Johnson, Mo., 286 S.W.2d 787, 795 [19, 20]; State v. Green, Mo., 305 S.W.2d 863, 874 [21].

The appellant further contends that the court erred in permitting the state to impeach Johnny Day, a witness on behalf of the state, and in permitting the state to examine the witness by asking leading questions and under the rules of cross-examination. The cases the defendant relies on relate to the impeachment by the state of its own witnesses and are not helpful on the facts of this case. The only reference the appellant makes to impeachment evidence is the testimony of police officer Alonso Kidd which is not further particularized. The testimony of Officer Kidd tended to fix the date on which he interviewed Johnny Day who had not given a specific date during his examination. The record does not support an issue on the impeachment complaint.

When placed on the stand by the state Johnny Day was a reluctant and unwilling witness. The assistant circuit attorney was granted leave to ask leading questions and to cross-examine the witness. By this means testimony was elicited from Johnny Day that he had seen the defendant Taylor at about 8 p. m. on a Saturday previous to the date Day was interviewed by police officers and that the defendant at that time

had sticking in his belt a revolver with a brown handle similar to the assault weapon.

 The record clearly shows that Day was a reluctant and unwilling witness in giving material testimony, and the court did not abuse its discretion in permitting his cross-examination by the state. State v. Palmer, Mo., 306 S.W.2d 441, 443 [6]; State v. Shelton, 351 Mo. 799, 174 S.W.2d 202, 205 [6]; State v. Shepard, 334 Mo. 423, 67 S.W.2d 91, 95 [10].

The defendant's final allegation of error concerns an incident which occurred during the voir dire examination of the jury panel. Mrs. Marie Belcolore, a panel member, stated in substance that the way she felt she would be ready to give the defendant "the maximum right now"; that she didn't feel right in listening to all that he had done and that "just what he done right now" was enough to make up her mind to give him the maximum. These remarks were not responsive to any question and apparently had as their basis the preliminary statement of counsel concerning the general nature of the case to be tried. Defendant's counsel, out of the hearing of the jury, requested the discharge of the entire jury panel. This request was denied, but the court excused Mrs. Belcolore and instructed the jury panel to disregard what she had said.

The appellant contends that Mrs. Belcolore's remarks gave the impression that she had information which was not in the record and got before the jury matters of a hearsay nature. The cases cited by the defendant involve situations where the prosecuting attorney during oral argument has stated or inferred that he had personal knowledge of matters bearing on the defendant's guilt which were not in evidence. We cannot give the record the construction for which the defendant contends and the cases cited do not determine the issue in this case.

 Normally, the disqualification of an individual juror for the expression of an opinion, or for making remarks indicating bias, is not a sufficient ground for a challenge of the entire panel. State v. Weidlich, Mo., 269 S.W.2d 69, 71 [4].

The trial court is in a much better position than this court to evaluate the effect upon others of such an unexpected outburst and the handling of the matter must be intrusted largely to its discretion. On the record before us, it has not been demonstrated that the trial court abused its discretion in refusing a mistrial. State v. Sanders, Mo., 313 S.W.2d 658, 660 [3]; State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 693-694 [8, 9]; State v. Scott, 359 Mo. 631, 223 S.W.2d 453, 455 [2, 3]; State v. Walters, Mo., 29 S.W.2d 89, 90 [1].

We have examined all the errors assigned and find them without merit. Accordingly the judgment is affirmed.

All concur.