**STATE of Missouri, Respondent,**

**v.**

**Thomas Jefferson LEE, Appellant.**

No. 56925.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

James L. McMullin, Hill & McMullin, Kansas City, for appellant; John J. Cosgrove, Kansas City, of counsel.

HOUSER, Commissioner.

■ Thomas Jefferson Lee has appealed from a judgment of conviction and sentence to life imprisonment following a jury verdict of guilty of first degree murder. This Court has jurisdiction under § 3, Art. V, Constitution of Missouri, 1945, V.A.M.S. as provided by that section prior to the amendment adopted at the special election of August 4, 1970, since the notice of appeal was filed prior to January 1, 1972. Art. V, § 31.

The state charged and introduced evidence that one John Frankoviglia, known as Johnny Franks, devised a scheme to exterminate Sol Landie pursuant to which defendant Lee, acting as in-between man or contact man for Franks, urged Ronnie Williams with the promise of money that Williams and his companions kill Landie; that Williams and three companions executed the commission, and that defendant paid Williams for the deed.

■ Reversible error was committed in not granting a mistrial when in the opening statement, in the state's case-in-chief, in cross-examining defendant, in presenting rebuttal testimony, and in the opening argument to the jury the prosecuting attorney and his assistant were permitted to develop facts implicating defendant in bombing and other criminal activities not charged in the indictment.

In the opening statement the prosecuting attorney said to the jury, "[Y]ou are going to hear from some of these murderers. You are going to hear that prior to the murder Ronnie Williams, who is one of our witnesses, one of those who have pled guilty to murder of Sol Landie, had worked for Tommy Lee [defendant-appellant herein] before. He had done some arson jobs for him before, some bombings for him and—." Counsel for defendant moved for a mistrial on the ground that defendant was charged simply with first degree murder; not charged with any other crimes "and it is absolutely flat-out reversible error to mention other crimes [with] which we are not charged in this indictment * * *." The motion was overruled.

For the state Ronnie Williams testified that defendant telephoned and asked Williams if he wanted to make $2,000. The prosecuting attorney asked Williams if he had had previous dealings of this kind with defendant, to which Williams responded, "I have." To the prosecuting attorney's query "What kind of dealings?" Williams answered, "Well, putting bombs different places." Counsel again moved for a mistrial on the ground that it was inflammatory and prejudicial "to elicit the ob-

vious answer that [defendant] had allegedly, without proof, engaged in prior bombings" when defendant was charged with murder and not charged with prior crimes of bombing. The court overruled the motion. The witness reiterated, "It was bomb dealings." The prosecuting attorney then asked, "So you had done some work for this defendant before?" A: "Right."

During the cross-examination of defendant the assistant prosecuting attorney, referring to Lee's delinquency in making payments on some furniture purchased by Lee from a furniture store operated by "Big Jim" McDonald and to the repossession of the furniture, asked Lee the following question, "And about the time that furniture was repossessed, you threatened to bomb his place, didn't you?" When Lee answered "No, sir," the assistant prosecuting attorney said, "Would you stand up, please, Mr. McDonald?" Mr. McDonald, a spectator in the courtroom, arose, whereupon the state's representative asked defendant whether he knew that man. Defendant acknowledged that he knew him and the assistant further queried, "You never threatened to bomb his place of business?," to which defendant answered, "No, sir, I did not." In rebuttal the state placed Mr. McDonald on the stand and after it was brought out that immediately before or about the time the furniture was repossessed Mr. McDonald had contacted defendant in an effort to collect the debt, the following appears of record: "Q And did he [defendant] at any time ever caution you against trying to collect it? A Well, the words he used, if I picked it up, he would blow up the place. Q If you picked it up, he would blow up your place? A That's right. Q Now, after you repossessed this furniture in July, did you at any time have any bombing incidents there? A Yes, sir. Three different times." The state further developed that Johnny Franks later approached Mr. McDonald, accompanied by defendant, and Franks said he or they could stop the bombings if Mr. McDonald wanted to pay two thousand dollars; that he knew who was doing it.

In opening argument the assistant referred to the participants in this crime as persons who live and prey on weak members of the community and who "live by bombing, by arson, by burglary, by all manner of crime, including murder."

■■ There is nothing in the record to indicate that these allusions to bombings and other crimes were admissible under any of the well-known exceptions to the general rule excluding such matter. See State v. Wing, Mo.Sup., 455 S.W.2d 457, 464 [10]. Proof of the commission of separate and distinct crimes is not admissible and may not be referred to by the prosecutor unless such facts have some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. There is nothing to indicate that the alleged bombings had any connection with or relation to the charge of murder for which defendant was on trial. Any such alleged specific crimes were offenses wholly separate and distinct from the offense with which defendant was charged. The state cannot prove any crime not alleged, either as foundation for a separate punishment or as aiding the proofs that he is guilty of the crime charged, even though he has put his character in issue. State v. Spray, 174 Mo. 569, 576, 74 S.W. 846, 848. (Defendant had not put his character in issue when the bombings were referred to in the opening statement and when witness Williams testified.)

In State v. Tillman, Mo.Sup., 454 S.W.2d 923, defendant was charged with carrying a concealed weapon. The prosecutor in opening statement remarked that the occupants of the parked automobile in which appellant was found asleep were arrested for murder and robbery. A witness for the state gave similar testimony. Quoting 22A C.J.S. Criminal Law § 682 " * * * evidence that accused has committed another crime independent of, and unconnected with, the one on trial is inadmissible; it

is not competent to prove one crime by proving another," this Court held that the statement and testimony were not related to the offense charged, had a dangerous tendency and misleading probative force and constituted reversible error, citing and quoting from State v. Holbert, Mo.Sup., 416 S.W.2d 129. See also State v. Hancock, Mo.Sup., 451 S.W.2d 6; State v. Reed, Mo.Sup., 447 S.W.2d 533; State v. Pollard, Mo.Sup., 447 S.W.2d 249; 9 Mo. Digest Criminal Law These references to and evidence of other crimes unrelated to the case on trial violated defendant's right to be tried for the offense for which he was indicted. State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 922–923; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307; State v. Martin, 74 Mo. 547; State v. Jones, 306 Mo. 437, 268 S.W. 83. In the latter case this Court said, " 'The practice of seeking to obtain an advantage in a trial of a case by injecting therein unfair insinuations should have the severest condemnation and suffer the most disastrous result permissible under the law.' " 268 S.W. l.c. 87. For gross violation of the foregoing elementary rules the conviction must be set aside.

 Other errors occurring during the trial which should be avoided on retrial include the following: (1) Trying the case on Sunday, in violation of § 476.250, RSMo 1969, V.A.M.S. which provides that no courts shall be open or transact business on Sunday, except to receive a verdict or discharge a jury. In this connection court and prosecuting attorney are referred to State v. Green, 37 Mo. 466, and Thompson v. Sanders, 334 Mo. 1100, 70 S.W.2d 1051, 1054–1055 [9]. (2) Instructing on advising, procuring or encouraging others to commit the act of shooting Sol Landie, without requiring the jury to find that defendant *intentionally* advised, procured, encouraged, etc. State v. Grebe, Mo.Sup., 461 S.W.2d 265, 268 [2]. (3) Permitting the prosecuting attorney to ask veniremen if they would automatically reject the testimony of certain state witnesses should it

be revealed that they had made inconsistent statements, were found to be liars or were admitted liars and perjurers.

Judgment reversed and cause remanded for a new trial.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.