STATE of Missouri, Plaintiff-Respondent,

v.

Larry MULLEN, Defendant-Appellant.

No. 35665.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 30, 1975.

Henry J. Rieke, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal by defendant Larry Mullen from a conviction of Robbery First Degree by means of a Dangerous and Deadly Weapon, a felony, §§ 560.120 and 560.135, RSMo 1969, and Murder First Degree, § 559.010, RSMo 1969. We affirm.

On June 30, 1972, Artie Hall, Benjamin Hall and Leonard Hall were conducting a dice game in the basement of the building located at 2105 Salisbury Street in the City of St. Louis, Missouri. Participants in the game were Gregory Smith (the deceased), Mattie Suttle, Silas Wilson, Daniel Jerrod, William Parker, Carl Hill and others. Play had begun at approximately 3:30 P.M., and continued into the night.

From time to time persons would come and go; one such incident occurred at approximately 11:00 P.M. At that time Roy Watkins arrived with two unknown persons. The lookout would not have allowed these persons to enter except that they were with Roy Watkins, who was known to the Halls. Roy Watkins was obviously intoxicated. The strangers, who were later identified as defendant and Carl Mullen, defendant's brother, walked over to the game. One of them placed a bet which he lost. Then Roy Watkins and the two men left within fifteen (15) minutes of their arrival. After they left, Artie Hall went into the alley to see where the strangers had gone.

At approximately midnight, Artie saw a 1964 Pontiac pull into the alley. Four men emerged from the automobile. Artie recognized defendant and Carl Mullen as the strangers who had been there shortly before. The men questioned Artie as to whether a game was still in progress and he responded in the negative. Indicating that he did not believe Artie's answer, Carl Mullen pulled a pistol and struck him. Artie was then forced at gun point to go into the basement with three of these men. As they reached the inner door of the room where the dice game was being conducted, Artie was struck again and someone took $90 from his person. The lookout, seeing Artie with a pistol to his head, opened the door.

Upon entering the basement, Carl Mullen proceeded to the dice game, announced "This is a stick-up, . . ." and had everyone put their money on the dice table. The defendant remained at the doorway with a gun. A third man entered, put the money in a pillowcase and ran out the door. Meanwhile, Carl Mullen struck several of the men with his pistol, knocking many of them to the floor. Finally, without provocation of any kind, Carl Mullen approached Gregory Smith, shoved him to the wall, and shot him in the face. Following the shooting, Carl Mullen and the defendant ran out.

The dice players began to get up and leave the basement and Artie Hall and Leonard Hall carried Gregory Smith out to the sidewalk. The police, having been called in the interim, arrived quickly and took Gregory Smith to the City Hospital where he was pronounced dead on arrival.

Other police officers arrived at the scene of the crime. One of these officers was Richard Bequette who observed a 1964 Pontiac car, with the motor running, stopped in the alleyway against the fence. In the glove compartment he found the defendant's wallet which contained his driver's license, social security card and other identification. He also found the body of Michael Cooper, one of the four men who had arrived in the car. Michael Cooper was apparently killed during the getaway, but there is no connection between his death and the instant case. Officer Emil Fiala, a member of the Evidence Technician Unit, photographed the car, "lifted" fingerprints from the rear view mirror, and removed the rear view mirror and turned it over to the Bureau of Identification. Officer John Salamone of the Bureau of Identification established that the fingerprints taken from the mirror were those of Carl Mullen.

On July 1, 1972, Artie Hall went to Benjamin Hall's home and picked out defendant from some photographs as being a participant in the robbery. On August 2, 1972,

Daniel Jerrod viewed the photographs and picked out defendant. On August 4, 1972, Artie Hall and Daniel Jerrod viewed a line-up and identified appellant as a participant and Carl Mullen as the other one of the two and the one who had done the actual killing. Both Artie Hall and Daniel Jerrod also made in-court identifications of defendant. William Parker, Leonard Hall and Benjamin Hall were unable to positively identify defendant.

By way of defense, defendant testified that in late May of 1972 Joyce Payne, Oscar Mullen's girlfriend, drove him to the St. Louis Workhouse to visit his brother Oscar. They went in the 1964 Pontiac car which was owned by his brother Oscar. He claimed that he left his wallet in the glove compartment on that occasion and had not been in the car since. Defendant also testified that on June 30, 1972, he and Charles Reed were at Rip's Lounge from 9:30 P.M. until 1:14 A.M., and then spent the remainder of the night at Charles Reed's house. Defendant produced no witnesses to bolster his testimony. The State called James Cooper as a rebuttal witness, and he testified that on June 29, 1972, he saw the defendant drive up to Cooper's house in a 1964 Pontiac car, which he identified as being the same one found at the scene of the crime.

The case was submitted to the jury on two counts. The jury returned a verdict of guilty on Count One, first degree murder and assessed punishment at imprisonment in the penitentiary for the remainder of defendant's natural life. The jury returned a guilty verdict on Count Two, armed robbery, but was unable to assess the punishment, so the trial court set punishment at twenty-five (25) years. Said sentences were to run concurrently. Defendant was permitted to appeal as a poor person and the St. Louis Public Defender was appointed to represent him on appeal.

At trial, during the presentation of the State's case, there were four incidents that now serve as the basis for defendant's appeal. First, after the jury had been impaneled, one of the jurors informed the sheriff that she recognized the mother of the deceased in the courtroom but that it would not influence her. The trial court on learning this held a meeting during the noon recess at which time the prosecution and counsel for the defense were informed of this. Following an in-depth questioning of the sheriff as to what had occurred, defendant's counsel moved for a mistrial which the court denied. Second, defendant objected to the introduction of certain evidence at trial. He objected to the introduction of his brother's fingerprints taken from the 1964 Pontiac car. The trial court overruled this objection. Third, defendant also objected to the introduction of the bullet which was removed by the Coroner from the brain of the deceased. This objection was overruled. And, finally, defendant objected to a reference by Police Officer De Vere to a certain paper silhouette which showed where the deceased had been found on the sidewalk after having been removed from the basement by Artie and Leonard Hall. He said, "It depicted one of the victims of a shooting." The trial court sustained defendant's objection to this reference by Officer De Vere but did not grant a mistrial. Defendant's allegations of error concerning these incidents are discussed in detail below.

■ Defendant's first contention is that, upon discovering that one of the jurors recognized the deceased's mother in the courtroom the trial court erred in not declaring a mistrial. The alleged grounds for a mistrial are bias and prejudice of the juror. The rule is that, where unpermitted communication or juror misconduct are established in a felony trial, the verdict is set aside unless the State sustains the burden of showing lack of improper influence. *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970); *State v. Jones,* 363 Mo. 998, 255 S.W.2d 801 (1953). Extrapolating from this rule, defendant asserts that the State's burden can be met only by direct communication between the disputed juror and the trial court and,

therefore, that the questioning of the sheriff was inadequate.

■■■ While defendant is correct in his statement of the law, his conclusion is unwarranted. First, most of defendant's cases deal with the receipt of improper communications by the juror during the course of the trial. *State v. Raspberry*, supra; *State v. Murray*, 445 S.W.2d 296 (Mo.1969); *State v. Jones*, 363 Mo. 998, 255 S.W.2d 801 (1953) and *State v. Schlie*, 350 Mo. 924, 169 S.W.2d 348 (1943). Here we are dealing with a juror's inaccurate answer during voir dire to the question of whether the juror recognized the victim by name, followed by his or her recognition of a relative of the victim in the courtroom. The receipt of potentially prejudicial communications is different in kind from a juror's own realization that he or she made a mistake, especially where the juror voluntarily discloses that mistake to the court. Once a juror has actually heard prejudicial statements, it is reasonable to presume their effect until proven otherwise, whereas mere recognition of a person tangentially involved in the trial does not by itself indicate that the juror is biased either for or against the defendant. Second, none of the cases, whether concerning improper communication or inaccurate answers during voir dire, establishes or even implies that the State's burden can be met only by direct communication between the juror and the trial court. In fact, the cases on inaccurate statements during voir dire establish that the determination of prejudice is within the sound discretion of the trial court. *State v. Hudson*, 508 S.W.2d 707 (Mo.App.1974). In *State v. Coones*, 357 Mo. 1124, 212 S.W.2d 429 (1948), acquaintance with the victim's family was held on appeal not to indicate bias even though the juror was not questioned at all. These cases considered basically three factors in determining prejudice: how well the juror knew the person recognized; whether the inaccurate answer was intentional or concealed, which might suggest prejudice; and the juror's own statement that he or she would not be influenced in deciding the

facts of the case. *State v. Armstrong*, 445 S.W.2d 367 (Mo.1967); *State v. Hudson*, supra. In the case at hand, these factors indicate absence of prejudice. The juror recognized the victim's mother in a way that indicated no more than a passing acquaintance; she didn't know the mother by name and thought she might have worked with her but was not sure. The inaccurate answer was neither intentional nor concealed; the mother was not in the courtroom when the jury was impaneled, and the juror told the sheriff as soon as she recognized her. And the juror had stressed to the sheriff that it would not influence her one way or the other. The trial court could ascertain all of these factors by its in-depth questioning of the sheriff. In such a situation, the trial court sustained its burden without direct communication with the juror. Third, although it may have been prudent for the trial court to have held a hearing on potential bias and prejudice, we note that defendant's counsel did not, at any time, request one. Surely, the court would have complied with such a request. Therefore, defendant's claim of bias and prejudice remains a bare allegation which he did nothing to substantiate.

■■■ Defendant's brief also advances a theory of juror misconduct in the juror's communication with the sheriff. However, defendant's counsel did not question the propriety of the contact between the juror and the sheriff at any time during the course of the trial, nor was any question dealing with this contact raised in the motion for a new trial. This point was not properly preserved for appeal.

■■■ Defendant's second contention is that the trial court erred in admitting into evidence the fingerprints of Carl Mullen, defendant's brother and co-indictee, which were taken from the 1964 Pontiac car. Defendant and Carl Mullen were tried separately for this crime, according to Missouri Criminal Procedure Rule 25.07, V.A.M.R. Thus, the State cannot show the disposition of charges against a co-indictee. *State v.*

*Aubuchon,* 381 S.W.2d 807 (Mo.1964) and *State v. Castino,* 264 S.W.2d 372, 375 (Mo. 1954). Similarly, damaging evidence which implicates only one of them should not be introduced against the other. See *State v. Castino,* supra. Defendant asserts that the fingerprints are irrelevant to his guilt and, further, that their admission would permit the jury to infer that Carl Mullen had already been found guilty. This latter inference, defendant says, would be prejudicial to him.

 At the outset, we must determine whether, under the circumstances, Carl Mullen's fingerprints were in fact relevant to Larry Mullen's guilt. Defendant is charged with what is commonly called "felony murder." Felony murder is a statutory classification which provides that any death caused in the perpetration of a felony is first degree murder. All participants in the felony are held liable for a murder committed by one participant. Therefore, defendant is not charged with having done the actual killing himself but rather is charged with having acted in concert with Carl Mullen. The State, in discharging its burden of proof, is entitled to show all of the circumstances immediately attending a homicide as a part of the *res gestae. State v. Shawley,* 334 Mo. 352, 67 S.W.2d 74, 83 (1933) and *State v. Brandt,* 467 S.W.2d 948, 952 (Mo. 1971). The circumstances immediately attending include "statements and exclamations or acts and conduct of third persons" that are closely connected to the crime. *State v. Talbert,* 454 S.W.2d 1, 3 (Mo.1970). Here, by the very nature of the case, the robbery is part of the *res gestae,* and the presence of Carl Mullen is crucial to the State's case against the defendant. The fingerprints in the getaway car are relevant, as they tend to place Carl Mullen at the scene of the crime and in the company of defendant.

Granted that it is prejudicial error to bring in evidence of the disposition of charges against a co-indictee, defendant is asking for a substantial extension of that rule when he asserts that it is reversible error to admit any evidence which might conceivably allow the jury to draw an inference as to the disposition of a co-indictee's case. In *Aubuchon,* upon which defendant relies, the prosecution intentionally brought out on redirect examination the fact that the witness' brother, who was jointly indicted with the defendant, was "in the penitentiary." The resulting implication was that the witness' brother had already been sentenced for his part in the robbery with which the defendant and the brother were both charged. Then, the prosecutor magnified that effect by stating in his final argument that the brother was "in the penitentiary" and that the defendant was the only one "of the whole bunch still on the street." *Aubuchon* is not controlling on the facts of this case. In those cases, including *Aubuchon,* which have found references to separate offenses to be prejudicial error, the challenged references have had two factors in common: they either stated or raised a clear inference as to the disposition of the other charge—and they had no probative value on the charge at issue. *State v. Johnson,* 456 S.W.2d 1 (Mo.1970); *State v. Aubuchon,* supra; *State v. Fenton,* 499 S.W.2d 813 (Mo.App.1973). Cf. *State v. Lee,* 486 S.W.2d 412 (Mo.1972); *State v. Robb,* 439 S.W.2d 510 (Mo.1970) and *State v. Holbert,* 416 S.W.2d 129 (Mo.1967).

Those two factors are not present in this case. We note initially that the objections in the above cases were typically to statements rather than to physical exhibits. Even *Holbert,* which involved the admissibility of exhibits, primarily stressed the prejudicial effect of testimony and repeated prosecutorial references to those exhibits. Here, the objection is to the fingerprints per se rather than to verbal insinuations. While the admission of a physical exhibit might, under some circumstances raise a clear inference as to the disposition of unrelated charges, we are unable to say that this one does so. To conclude that the only inference the jury could have drawn from the use of the fingerprint evidence was that

Carl Mullen had already been found guilty would require either clairvoyance or fearless speculation on our part. Furthermore, even if the use of the fingerprints might have raised that inference, they would have been admissible simply because, as discussed above, they are relevant. *State v. Lee,* supra, at p. 414. In an analogous situation, the Missouri Supreme Court said:

". . . When a defendant in the course of the perpetration of one crime commits another, the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which he is not on trial, when it forms a part of the res gestae of the crime charged." (*State v. Sinovich,* 329 Mo. 909, 46 S.W.2d 877, 880 (1931))

In short, there is no indication in the present case, that the admission of the fingerprints drew the jury's attention away from the issues it was called upon to resolve.

Defendant's third contention is that the trial court erred in admitting into evidence the bullet that killed the deceased. Defendant had offered to stipulate to the Gregory Smith death and the means of death. This, he says, removed those issues from the case, so that the sole reason for the State's introduction of the bullet was its inflammatory and prejudicial effect on the jury. Defendant quotes *State v. Mucie,* 448 S.W.2d 879 (Mo.) cert. den. 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970), for the proposition that "It is error to admit evidence of an inflammatory nature if it does not reasonably tend to prove or disprove a disputed fact issue . . .." However, this proposition has its application where the fact proved is not in issue at all, not where the evidence tends to corroborate a fact in issue. See *State v. Pearson,* 270 S.W. 347, 351 (Mo.1925). In *Mucie* itself, a manslaughter trial, the challenged evidence was admitted to corroborate the cause of death, although this was not disputed or denied. See also *State v. Henderson,* 510

S.W.2d 813 (Mo.App.1974). The applicable principle in the case at bar is that the accused cannot use stipulation or admission to "cut-off" the State's right to offer evidence. *State v. Brandt,* 467 S.W.2d 948 (Mo.1971); *State v. Spica,* 389 S.W.2d 35 (Mo.1955); *State v. Boyer,* 342 Mo. 64, 112 S.W.2d 575 (1937); *State v. Shawley,* 334 Mo. 352, 67 S.W.2d 74 (1933) and *State v. Townes,* 522 S.W.2d 22 (Mo.App.1974). This is especially apposite where, as here, the defendant has pleaded innocent, which put all facts in issue. *State v. Moore,* 435 S.W.2d 8, 11 (Mo. Banc 1968). Evidence which is otherwise admissible will not be excluded merely because it is prejudicial. *State v. Tillett,* 233 S.W.2d 690 (Mo.1950). And, in any event, a bullet is hardly the type of exhibit which would be characterized as so highly prejudicial as to be excluded on that ground. This exhibit is not comparable to blood-spattered clothing or gruesome photographs of the deceased or menacing weapons. Therefore, even if the bullet had been lacking in probative value, it would not have been reversible error to admit it. *Hungate v. Hudson,* 353 Mo. 944, 185 S.W.2d 646 (1946); *State v. Walden,* 490 S.W.2d 391 (Mo.App.1973). The bullet was neither irrelevant nor inflammatory and prejudicial; its admission did not constitute reversible error.

Defendant's fourth contention is that the trial court erred in overruling defendant's motion for a mistrial after the State's witness had made reference to the paper silhouette of Gregory Smith as depicting "one of the victims." The alleged grounds for a mistrial is that this statement constituted evidence of another crime and was highly prejudicial to the defendant. Granted, it is a general rule that evidence of other crimes is not admissible when not related to the cause, because it has a tendency to inflame and prejudice the jury. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (1954) and *State v. Hudson,* 521 S.W.2d 43 (Mo.App.1975). Therefore, Officer De Vere's response was not admissible. But that is not the issue. The issue is whether

his unelicited reference necessitated a mistrial.

■ The declaration of a mistrial is a drastic remedy that "should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way. . . . " *State v. Camper,* 391 S.W.2d 926, 928 (Mo.1965); *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970); *State v. Dennison,* 428 S.W.2d 573 (Mo.1968). The prejudicial effect of an incident and the possibility of its removal by means other than declaring a mistrial are within the discretion of the trial court and the appellate court is limited to determining whether the trial court abused its discretion. *State v. Camper,* supra. In the instant case, counsel for the defendant objected immediately. The trial court sustained the objection and called a short recess to permit the prosecuting attorney to caution the witness about reference to the body found in the Pontiac automobile but refused to declare a mistrial. The trial proceeded to completion without any further mention of the other "victim." In view of the indirect nature of the reference and the quick, effective action taken by the court, the trial court did not abuse its discretion when it determined that merely sustaining the objection to this language would be sufficient to remove the prejudice from this case.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

SIMEONE, P. J., and GUNN, J., concur.