**STATE of Missouri, Respondent,**

v.

**William "Pete" MANNON, Appellant.**

**No. 13072.**

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 30, 1983.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 20, 1984.

John D. Ashcroft, Atty. Gen., Sandra K. Stratton, Asst. Atty. Gen., Jefferson City, for respondent.

James R. Robison, Sikeston, for appellant.

GREENE, Chief Judge.

Defendant, William "Pete" Mannon, appeals his conviction, after jury trial, of second degree murder, § 565.004,[1] for shooting and killing Ricky Brooks, for which he was sentenced to 50 years' imprisonment.

This is the second time around for this case, defendant's first conviction having been reversed by the Supreme Court because of trial court error in instructing the jury that voluntary intoxication was not a defense to the charge of second degree murder. *State v. Mannon,* 637 S.W.2d 674 (Mo. banc 1982).

Mannon's first point relied on is that the trial court erred in overruling his motions for judgment of acquittal at the close of the state's case, and at the close of all of the evidence, and in submitting Instruction No. 5 (second degree murder) to the jury because there was insufficient evidence to show that Mannon had a specific intent to kill at the time he shot Ricky Brooks.

In order to resolve this question, we consider the facts in evidence and the favorable inferences to be drawn therefrom in the light most favorable to the state, disregarding all evidence and inferences to the contrary. *State v. Watson,* 350 S.W.2d 763, 766 (Mo.1961); *State v. Williams,* 623 S.W.2d 552, 553 (Mo.1981). Viewed in this light, the evidence shows that on February 29, 1980, at about 11:00 A.M., Mannon started tavern hopping with his girl friend, Wanda Carter. He drank beer steadily through most of the day. During one of his stops, which was at the Main Street Tavern in East Prairie, Missouri, Mannon displayed a .38 caliber pistol loaded with hollow point bullets to some of his friends. Clifford Griggs, the tavern owner, tried to persuade Mannon to leave the pistol with him, since Mannon had been drinking. Mannon refused. While defendant was exhibiting the loaded pistol, he said, "If there's any trouble tonight, I can take care of it."

Ricky Brooks, who evidently had no contact with Mannon earlier in the evening, arrived at the Crystal Inn Bar in Charleston, Missouri, about 11:30 P.M., and joined friends at a table in the bar. Mannon arrived at the Crystal Inn at approximately 12:30 A.M. on March 1. He sat at the bar, and continued to drink until closing time, which was at about 1:00 A.M. There was no contact or controversy between Mannon and Ricky Brooks while they both were in the bar.

Verlin Uthoff, the owner of the Crystal Inn, began turning off the lights and telling customers to leave so that he could close the bar. Ricky Brooks, Mannon, and several other people, started to leave the bar via a

1. All references to statutes are to RSMo 1978, V.A.M.S.

hallway. Mannon was heard to say, "Don't tell me to go out first." Mannon and the other people exited from the bar, except for Carl Matheny and Ricky Brooks, who were still in the hallway. Mannon re-entered the hallway, walked up to Brooks and shot him in the stomach. The bullet lacerated the right iliac artery in Brooks' pelvic area, and he bled to death in a matter of minutes. Mannon threw the pistol onto the roof of the bar where it was later recovered by the police.

When taken into custody, Mannon made several admissions, including one to Sheriff Norris Grissom, in which he said, " 'Who did I shoot? I must have—' or 'I shot the wrong man. I drove all the way from Arkansas, ended up shooting the wrong damn man.' "

There seems to be little doubt from the evidence that Mannon was intoxicated when he shot Brooks. The evidence was conflicting as to whether his degree of intoxication was such that, because of such condition, it prevented him from forming an intent to do serious bodily harm to the person he shot and killed.

▪ Evidence tendered by the state of a killing by the use of a deadly weapon on a vital part of the body of the victim is sufficient for the jury to find an intent to kill, or to do serious bodily injury. *State v. Ward,* 569 S.W.2d 341, 344 (Mo.App.1978). The fact that Mannon intended to shoot someone else and shot Ricky Brooks instead, thinking he was some other person, is of no legal comfort to the defendant here. Mannon's guilt in killing Brooks is measured, and the degree of homicide determined, by what defendant's crime would have been had he shot and killed his intended victim. In cases like this, the intention follows the bullet. *State v. Eiland,* 534 S.W.2d 814, 817 (Mo.App.1976).

▪ As to Mannon's intoxication, it was the jury's function to determine whether he was so drunk that he did not know what he was doing. It determined that he was not. The evidence was sufficient to sustain a conviction of second degree mur-

der, and there was no trial error in giving a second degree murder instruction. The point is denied.

Defendant's remaining point relied on is that the trial court erred in failing to give an instruction defining the phrase "serious bodily harm," a term referring to one of the elements contained in the state's second degree murder verdict directing instruction. The instruction, as given, reads as follows:

### "INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 1, 1980, in the County of Mississippi, State of Missouri, the defendant caused the death of Ricky Alan Brooks by shooting him, and

Second, that the defendant intended to cause serious bodily harm to Ricky Alan Brooks, and

Third, that the defendant did not do so in anger suddenly provoked by the unexpected acts or conduct of Ricky Alan Brooks,

then you will find the defendant guilty of murder in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of murder in the second degree you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than ten years nor more than life imprisonment."

Mannon contends that the Missouri Supreme Court, in *State v. Rodgers,* 641 S.W.2d 83 (Mo. banc 1982), mandated that the phrase "serious physical injury" must be defined in a jury instruction, that failure to do so is reversible error, and that since "serious physical injury" is synonymous with "serious bodily harm", the rationale of *Rodgers* extends to this case. Defendant's reliance in *Rodgers* is misplaced. *Rodgers* was a rape case.

The Notes on Use for a verdict directing instruction on rape (MAI–CR2d 20.02.1) requires a separate instruction defining the term "serious physical injury." Serious physical injury is defined in § 556.061 (code definitions) as meaning "physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." The statute does not contain any definition of "serious bodily harm." Notes on Use for the second degree murder instruction used here (MAI–CR2d 15.14) do not require a separate instruction defining "serious bodily harm."

In addition, Item 8 of the Notes on Use following MAI–CR2d 33.00 (Definitions—General Form) states:

> "Unless the Notes on Use expressly require or permit the definition of a term, word or phrase, it must not be defined even if requested by counsel or the jury. *State v. [Abram] Abrams,* [sic] 537 S.W.2d 408 (Mo. banc 1976). In short, the Notes on Use under the MAI–CR forms approved or reapproved after May 1, 1978 give complete and exclusive directions as to all terms, words or phrases which either must or may be defined."

The rule in *State v. Abram,* supra, was reaffirmed in *State v. Moland,* 626 S.W.2d 368, 372 (Mo.1982). Unless the Notes on Use for a particular instruction expressly require or permit the giving of an additional instruction defining a word, term or phrase, it must not be given. The trial judge here, in giving MAI–CR2d 15.14, defining the elements of second degree murder, did all that the law and the Supreme Court rules required him to do. In addition, it is inconceivable to believe that a juror of average intelligence would not infer that when Mannon, at close range, shot Brooks in the stomach with a hollow point bullet from a .38 caliber pistol, he intended to do his victim serious bodily harm. Failure to define serious bodily harm was not error.

Judgment affirmed.

CROW, P.J., and FLANIGAN, MAUS and PREWITT, JJ., concur.