**STATE of Missouri, Respondent,**

v.

**Victor MALLORY, Appellant.**

**No. WD 39334.**

Missouri Court of Appeals,
Western District.

Jan. 19, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 1, 1988.

Application to Transfer Denied
April 19, 1988.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

Victor Mallory appeals his jury trial convictions for forcible rape, armed criminal action, attempted forcible sodomy, and burglary in the first degree.

On July 14, 1986, sixteen-year-old Deanna Haley was sleeping on her living room floor. Her mother, Sharon Haley, left for work without disturbing Deanna's sleep. Deanna awoke to the sound of her pet

poodle, Mindy's, barking. She got up to see what the poodle was barking about, looked out of the kitchen window and saw two black males trying to force their way into her house. She called 911 and walked back into the living room to put on more clothing but was interrupted by Mallory who told her to turn over on the couch and spread her legs. She refused and he slapped her. She pleaded with him to allow her to go to the bathroom. He grabbed her by her hair and took her to the bathroom, told her she was lying and threw her on the bathroom floor. He then ripped off her underwear after covering her face and proceeded to rape her.

Mindy, the poodle, was barking throughout the attack. As Mindy stood about four inches from Deanna's head, Deanna heard a gunshot followed by the sound of the dog's retreat, whimpering and crying. After the attack Mallory pulled the bath mat away, put his penis in front of her face and told her to suck on it. She told him she didn't know how, so he zipped up his pants and left the room returning only to ask her for money and kick her in the head. She stayed there until the house was silent, then ran to the door when the police had arrived. Officer Timothy Smith saw a black male running from the house. He gave chase but lost him in a wooded area. Officer Brian Price then saw a blue Oldsmobile pull out at a high rate of speed. Shortly thereafter, in close proximity to the crime scene, an accident occurred involving two black males in a blue Oldsmobile 88. The driver of the other vehicle involved testified that after she left her car to inspect for damage, one of the black men got into her car and tried to start it. Prevented from doing so, he and the other black man took off running. The blue Oldsmobile involved in the accident was found to be registered to the appellant, Victor Mallory. Deanna identified Victor Mallory as her attacker in a police line up. He was subsequently tried and convicted.

■ Appellant first argues that the trial court erred by allowing into evidence references to the suffering and death of the victim's dog from a gunshot wound. This evidence is characterized by appellant as prejudicial and of relatively little probative value. The state used the evidence in question to support the charge of armed criminal action. The rape victim had her face covered during the rape and was only able to tell that her attacker was armed by the sound of the gunshot and the whimpers, cries and retreat of the wounded dog.

In the instant case, whatever emotion the suffering and death of a pet dog may engender, the relevancy of this evidence on the issue of armed criminal action outweighs its prejudicial nature as was properly decided by the trial court. The evidence was admissible on the charge of armed criminal action. It falls to the discretion of the trial court to weigh the evidence using relevancy as its main criteria for admission. *State v. Williams,* 652 S.W.2d 102, 113 (Mo. banc 1983). Appellant's Point I is denied.

Appellant's next point is that the trial court erred in overruling defense objections to the state's closing argument; "But how many of you have been raped? How many of you have had a penis put in your face— .... [Y]ou're talking about an individual who wasn't working at that time. Who knows what he was doing during the day...."

Appellant argues that this was: (1) an improper personalization of the argument to the jury; and (2) an improper inference that being unemployed is related to criminal conduct.

■ A prosecuting attorney is not allowed to personalize his argument to the jury. *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970). It is the duty of the jury to make a decision based solely on the evidence and not upon their own fears and emotions. *Id.* at 172. Personalization interferes with this process. However, a great deal of latitude is given to a prosecutor in his closing argument, especially when he is retaliating in response to arguments by the defense. *State v. Kirksey,* 713 S.W.2d 841 (Mo.App.1986). The first remarks challenged by appellant are; "But how many of you have been raped? How many of you have had a penis put in your

face—." Standing alone this does seem a personalized remark. However, the prosecutor was, in fact, responding to an argument made by defense counsel concerning the victim's identification of appellant.

Appellant's attorney made the following argument:

There are other reasons why you should not trust her identification. She said she stared at the man's face ... looking at his mouth.... [B]ut when the man is yelling at you and he is demanding things and you are looking at him dead in his mouth, don't you think that is something that you're going to see, there's a shiny gold tooth and do you think if she would have saw [sic] it in his mouth, she would remember it?"

The comments made by the prosecutor were invited by appellant's counsel. A prosecutor may be permitted to go farther in retaliation than he would've been permitted in the first instance. *State v. Williams,* 721 S.W.2d 102, 107 (Mo.App. 1986); *State v. Davis,* 684 S.W.2d 38, 44 (Mo.App.1984). Appellant may not provoke a response to his argument and then cry foul. *State v. Bockes,* 676 S.W.2d 272, 276 (Mo.App.1984).

■ The second statement complained of by appellant is, "... you're talking about an individual who wasn't working at that time. Who knows what he was doing during the day, but—." Appellant takes this remark out of context. The inference appellant assigns the remark is not tenable. Again the prosecution was arguing about the identification of the appellant as the victim's assailant. Defense counsel characterized the complexion of Deanna's attacker, whether he was dark, medium, or light complexioned, as a very important fact in the case. The prosecution was responding to this and appellant takes the remark out of context. The issue was the darkness of appellant's skin; the remark should read, "[w]e all tan, and you're talking about an individual who wasn't working at that time." Appellant's Point II is denied.

■ Appellant's third point is that the trial court erred in refusing to allow appellant to be recalled to the witness stand to testify as to why he went to the police station. Appellant argues that the fact he went to the station in response to a letter informing him his automobile was in police custody was not an acknowledgment of guilt on his part. A trial judge has broad discretion in determining the relevancy of evidence and this determination should only be disturbed if an abuse of that discretion is found. *State v. Brown,* 718 S.W.2d 493 (Mo. banc 1986). Relevancy deals with whether a piece of evidence tends to support or establish a fact in issue. *State v. Burton,* 721 S.W.2d 58, 62 (Mo.App.1986). Here appellant's appearance at the police station was properly adjudged irrelevant as it did not deal with any fact in issue. Appellant had already testified that he was at the police station voluntarily and had not been apprised of the fact that a rape was being investigated. Appellant's Point III is denied.

■ Appellant's next point concerns the evidence of Rebecca Barnett as to an attempt to steal her car by two black men on the day and in the area in question. Specifically, appellant charges that the trial court erred in its failure to grant a mistrial on the grounds that such evidence was irrelevant as evidence of an uncharged crime and because the witness did not identify the black male. Appellant is laboring under a misapprehension as to the nature of this evidence.

Barnett testified that she hit a car whose back end was almost into a ditch. This spun the car into a ravine. She got out of her car and one of the black males got in and tried to start it. The other black man ran off into the woods. The state used her evidence in connection with other evidence adduced on the issue of flight. A blue Oldsmobile occupied by two black males, was seen leaving the vicinity of the rape immediately after a police officer chased a black male into the woods just after the attack. This Oldsmobile was found to be registered to appellant. Here the evidence of flight from the burglary is admissible. A major exception to the general rule which excludes proof of separate crimes by

a defendant allows such evidence if it shows, "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others." *State v. Weatherspoon*, 728 S.W.2d 267, 272 (Mo. App.1987) (quoting *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954) (en banc)). The court in *Weatherspoon* also looks at the "parallel exception to the 'common scheme or plan exception.'" *Id.* at 272. The parallel exception looks to whether the proof of another crime is "linked in point of time and circumstance with the crime charged that one cannot fully be shown without proving the other." *Id.* at 272–73. Here the evidence of Barnett, concerning the actions of the two black males following the collision, coupled with the initial flight of the men in the Oldsmobile is admissible "to paint a complete and coherent picture of the crime charged." *State v. King*, 588 S.W.2d 147, 150 (Mo.App.1979). Appellant's Point IV is denied.

■ Appellant next challenges the sufficiency of the evidence to support his conviction on the charge of armed criminal action. This argument is grounded on the assertion that the forcible rape was not committed "by, with or through" the use of a deadly weapon as shown by the testimony of the victim. Appellant's contention must clearly fail.

In considering appellant's argument the evidence must be viewed in the light most favorable to the state. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). The testimony of the victim is clear:

A. Well, he was still in—standing—sitting above me, and he had told me—my dog was still barking and he asked my dog to shut up. He told me to make my dog shut up and I couldn't and my dog was still barking, so finally I still had my face covered, all of a sudden I heard a gun shot and my dog standing like four inches behind my head, and all of a sudden she started really crying and whimpering. . . .

. . . .

Q. When the bullet went off, how did it sound to you, how close were you?

A. It was very close. The dog was standing like four inches behind my head.

Q. Is there any doubt in your mind that it was gun shot?

A. There was no doubt. I knew it was.

. . . .

Q. . . . . Now, what was the next thing that was done to you, after you heard the gun shot, what's the next thing that happened to you?

A. He moved from—he was right in front of my legs and he zipped his pants and—well, he didn't zip his pants. He was—he pulled his penis out. . . .

The credibility of the victim's testimony is a matter for the jury to decide. *State v. Williams*, 652 S.W.2d 102, 111 (Mo. banc 1983). The record shows that appellant used the gun to shoot the dog in the course of the rape. To support a charge of armed criminal action, the state must prove that appellant committed a "felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." § 571.015, RSMo 1986. The state amply provided such proof. Appellant's Point V is denied.

■ Appellant's final argument is that the trial court committed plain error in its failure to define "serious physical injury" in the jury instruction on the attempted forcible sodomy charge.

The following instruction was submitted to the jury:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 14, 1986 in the County of Jackson, State of Missouri, the defendant removed his penis from his clothing and attempted to force Deanna Haley to place his penis in her mouth by placing it in front of her face and telling her to put it in her mouth, and

Second, that such conduct was a substantial step toward the commission of

the offense of forcible sodomy upon Deanna Haley, and

Third, that defendant engaged in such conduct for the purpose of committing such forcible sodomy,

then you will find the defendant guilty under Count III of an attempt to commit forcible sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of "sodomy" if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

Forcible compulsion means either (a) physical force that overcomes reasonable resistance or (b) a threat, expressed or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping of himself or another person.

"Deviate sexual intercourse" means any sexual act involving the genitals of one person and the mouth, tongue, hand, or anus of another person.

As used in this instruction, the term "substantial step" means conduct which is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of forcible sodomy.

If you do find the defendant guilty under Count III of an attempt to commit forcible sodomy, you will assess and declare one of the following punishments:

1. Life imprisonment, or

2. Imprisonment of a term of years fixed by you, but not less than five years.

The instruction given was patterned after MAI–CR3d 320.08.1. Missouri cases on

the use of MAI–CR2d hold that if the Notes on Use do not specifically permit or require the definition of a term in the instruction it must not be given. *State v. Abram,* 537 S.W.2d 408, 410 (Mo. banc 1976). *See also, State v. Moland,* 626 S.W. 2d 368, 372 (Mo.1982); *State v. Mannon,* 663 S.W.2d 780, 783 (Mo.App.1983). This holding restates MAI–CR2d 33.00 which has been superceded by MAI–CR3d 333.00, but the same proposition holds true. The notes [1] following this instruction make it clear "serious physical injury" need not be defined as it falls within the definition of "forcible compulsion" and was not used in any of the other instructions. Appellant's final point is denied.

The judgment is affirmed.

---

1. Definitions.

    (a) When any of the following terms are used in this instruction (other than in the definition of "forcible compulsion"), the paragraph defining that term must be used:
        "dangerous instrument,"
        "serious physical injury."

If any of these terms are used in more than one instruction, the paragraph defining that term need not be included in this instruction. In that case, it must be defined in a separate instruction.

    If the terms are not used, the optional paragraphs defining those terms should not be used. MAI–CR3d 320.08.1 n. 6.