**William "Pete" MANNON,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 16417.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 10, 1990.

Motion for Rehearing or Transfer
Denied April 25, 1990.

Janet M. Thompson, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

By information filed in the Circuit Court of Mississippi County, movant William "Pete" Mannon (to whom we shall refer as the defendant) was charged with the commission of second-degree murder on March 1, 1980. A jury found the defendant guilty. His punishment was assessed at imprisonment for a term of 30 years. On appeal the cause was transferred from this court to the Supreme Court, which reversed for instructional error. *State v. Mannon,* 637 S.W.2d 674 (Mo. banc 1982). On retrial the defendant was again found guilty by a jury. His punishment was assessed at imprisonment for a term of 50 years. On appeal, this court affirmed the judgment of conviction. *State v. Mannon,* 663 S.W.2d 780 (Mo.App.1983).

Thereafter the defendant filed a motion for post-conviction relief pursuant to former Rule 27.26. The motion court denied relief without an evidentiary hearing. On appeal, this court reversed and remanded with directions to make findings of fact and conclusions of law on all issues presented, as required by former Rule 27.26(i). *Mannon v. State,* 727 S.W.2d 936, 939 (Mo.App. 1987). On remand, counsel was appointed for the defendant and the petition or motion for relief was amended. For one reason or another, disposition of the matter on the merits was postponed for some time.

On April 14, 1989, the trial court made findings of fact and conclusions of law based on the record, but again denied relief without conducting an evidentiary hearing. The defendant has appealed.[1] We affirm the judgment.

▮ The defendant's assignments of error have been correlated with the trial court's findings of fact and conclusions of law. It may be granted that the findings of fact and conclusions of law are to some degree inaccurate, but the merits of the appeal do not turn upon the correctness of the trial court's findings. Even if the basis for the trial court's denial of relief was incorrect, we must affirm the judgment if it is sustainable on other grounds. *State v. Kimes*, 415 S.W.2d 814, 815 (Mo.1967); *Frederick v. State*, 754 S.W.2d 934, 936 (Mo.App.1988); *Mercer v. State*, 666 S.W.2d 942, 947[9–11] (Mo.App.1984). The defendant's claim for relief is in substantial part that he was denied the effective assistance of counsel. In reviewing a claim of ineffective assistance of counsel, this court must deny relief unless the defendant demonstrates that he was prejudiced even though counsel's performance may have been defective. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987); *Frederick v. State*, 754 S.W.2d at 936. Therefore, even though for the purpose of reviewing the dismissal of the defendant's motion we assume the well-pleaded facts to be true, we must also consider the question of prejudice. This consideration involves a determination that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Frederick v. State*, 754 S.W.2d at 936. A "reasonable probability" in this context is a probability sufficient to undermine confidence in the outcome. *Bannister v. State*, 726 S.W.2d 821, 824[2] (Mo.App.1987), cert. denied, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987).

Initially two allegations of trial counsel's ineffectiveness are called to our attention.

In paragraph 9(f)(vi) and 9(f)(xi) of his amended motion the defendant alleged:

"(vi) Counsel failed to object to hearsay testimony of witnesses including, but not limited to, that of Carl Matheny [sic] and Willis Cox, as the transcript will prove, and the testimony was extremely prejudicial to [defendant] because the testimony was that they heard certain persons say [defendant] had shot the victim but no eye-witness testimony as to who actually shot the victim was presented.

\*　　\*　　\*　　\*　　\*　　\*

(xi) Counsel failed to object to police testimony concerning [defendant's] refusal to sign a Statement of Rights or [a] Waiver of Rights and refusal to make a statement upon his arrest. This testimony prejudiced [defendant] in that it left an impression in the minds of the jurors that [defendant] knew his rights and had therefore been through the criminal justice system before this incident."

As to ground 8(f)(vi) of the motion, the trial court found:

"Counsel's failure to object to certain testimony is within that counsel's discretion and trial strategy. The [defendant] fails to state sufficient facts of the testimony not objected to in order to be granted relief. Even if counsel's failure to object to certain hearsay testimony was not an exercise of [that] customary skill and diligence that a reasonably competent attorney would exercise, [defendant] was not prejudiced thereby. Testifying at trial, Mississippi County Sheriff, Norris Grissom, told the jury that the defendant asked police officers who he shot and then stated that he had driven from Arkansas and shot the wrong man. This testimony, taken with all the testimony at trial, would have been enough to convince the jury of [defendant's] guilt."

As to ground 8(f)(xi) of the defendant's amended motion, the trial court found:

"(xi) Counsel's failure to object to police testimony concerning Statement of

---

1. Inasmuch as sentence was pronounced prior to January 1, 1988, and a motion under former Rule 27.26 was pending when present Rule 29.-15 became effective, we consider this proceeding to be governed by the law applicable to proceedings under former Rule 27.26.

Rights, or Waiver of Rights did not prejudice [defendant].... In this case, even if counsel was deficient in failing to object to such testimony, the State made an extremely strong case, including [defendant's] admission that he shot the victim. The [defendant] therefore was not prejudiced. *McLaurin v. State,* 755 S.W.2nd 341, 343 (Mo.App.1988). There [is] no reasonable probability that counsel's failure to object to police testimony of [defendant's] refusal to sign the forms would have altered the trial's result."

The excerpt of the record we have quoted makes it plain that the issue tendered by the defendant's first point is this: Does the record presented to the trial court warrant the conclusion that no prejudice resulted from trial counsel's failure to object to inadmissible evidence? Unless it may be said that but for counsel's failure to object, there is a reasonable probability that the result of the proceeding would have been different, this question must be answered affirmatively.

The State had the evidence of Carl R. Matheney who was present at the Crystal Inn in Charleston when the defendant shot and killed Ricky Brooks. Matheney went to the Crystal Inn between 11:30 and 12 p.m. on February 29, 1980. Matheney left the Crystal Inn with Ricky. The defendant came in the door by which they were leaving. He had his hands in front of him. As the defendant approached Ricky, he "put his hands like that (indicating) and then the shot went off and Ricky fell." It appeared to Matheney that the defendant aimed a handgun at his victim's abdomen. In response to a very general question about "what happened" thereafter, Matheney testified:

"After the shot was fired, Pete [defendant] stood there for a few seconds, then Larry came in.

Q. Larry who?

A. Larry Johnson.

Q. What happened next?

A. Then he said, 'Pete, come on. Let's go.' And Wanda, she stuck her head —

Q. Wanda who?

A. Wanda Johnson.

Q. All right; what did she say?

A. She stuck her head in the door and *Larry told her, 'He done shot him,'* and they, Ricky and Pete—I mean Larry and [the defendant]—went back outside." (Emphasis added.)

Counsel for the defendant argues that this testimony was clearly hearsay and highly prejudicial, and trial counsel's failure to object to it demonstrated prejudicial incompetence on counsel's part.

The defendant also calls our attention to the testimony of Willis Cox. Cox, a police officer, was asked about the defendant's conduct when he was taken in custody. Cox testified he took the defendant's arm while he led the defendant to a police car. Cox was afraid the defendant "might try to run or something." Being asked why he was afraid the defendant might "try to run," Cox answered, "[w]ell, *all the people that said he had shot this man,* and I didn't want him getting away from me." (Emphasis added.) Counsel argues that the statement "all the people ... said he shot this man" is further prejudicial hearsay and trial counsel's failure to object to this statement further demonstrates his incompetence.

■ It is further contended that on two occasions, the State was permitted to show the defendant's failure to volunteer an exculpatory statement on arrest. It is, of course, true that the State may not use post-arrest silence either as affirmative proof of the defendant's guilt or to impeach his testimony. *State v. Mathenia,* 702 S.W.2d 840, 842[2] (Mo. banc), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *State v. Nolan,* 595 S.W.2d 54, 56 (Mo.App.1980). In this case, the State's evidence of post-arrest silence was very similar to that discussed in *State v. Mathenia,* 702 S.W.2d at 841–42. Officer Cox was asked if he had spoken to the defendant after he took the defendant in custody. Cox responded that he had, stating that:

\* \* \* \* \* \*

"A. Well, after I got him to the station—I didn't ask him anything until I got him to the station. Placed him under arrest, carried him to the station, read him his rights, and then asked him what happened.

And he just told me that he wouldn't tell me anything; he wouldn't tell me anything.

Q. Didn't make any statement?

A. Didn't make any statement at all to me."

\* \* \* \* \* \*

The State also had the evidence of the Charleston Chief of Police, William Ritchey. Chief Ritchey testified that after the defendant had been taken to the Charleston police station:

\* \* \* \* \* \*

"A. ... I took Mr. Mannon into my office. I asked the Lieutenant if he had been advised of his rights; said he had. I readvised him of his rights. He said he understood his rights. He wouldn't sign the waiver of rights form.

I tried to question him as to what took place; didn't want to make any statements. Said he wanted to talk to, at that time, Sheriff Norris Grissom; asked me if I would call him for him. I said I would, which I did.

Norris Grissom arrived at my office. We, together, tried to talk to Mr. Mannon. He wouldn't give us any type of a statement, handwritten statement, on the incident."

■ We are not sure that the evidence to which the defendant now says trial counsel should have objected was inadmissible for any purpose. The statements which were elicited from Matheney and Cox are arguably admissible under the so-called *res gestae* principle. It has been broadly held that in homicide cases the State, in discharging its burden of proof, is entitled to show all of the circumstances immediately attending a homicide as part of the res gestae. The circumstances immediately attending include statements and exclamations or acts and conduct of third persons that are closely connected to the crime. *State v. Tal-*

*bert,* 454 S.W.2d 1, 3 (Mo.1970); *State v. Mullen,* 528 S.W.2d 517, 522 (Mo.App. 1975). As to the accused's failure to volunteer an exculpatory statement at the time he was arrested, we do not find that references to the defendant's post-arrest silence were used either: 1) as affirmative proof of his guilt or 2) to impeach him. See again *State v. Mathenia,* 702 S.W.2d at 842[2].

■ We do not, however, base our conclusions concerning the defendant's first point on an assumption that trial counsel's objections to the testimony complained of would have been unavailing. The question, as we have said, is whether the record presented to the trial court supports the conclusion that but for trial counsel's failure to object to inadmissible evidence, the result of the trial would probably have been different. We think not, and we do not believe an evidentiary hearing was necessary for the trial court to reach the result it reached.

In evaluating a claim of ineffective assistance of counsel, " ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ..." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). Specifically addressing failure to object to inadmissible evidence or objectionable argument as ineffective assistance of counsel, our courts have usually held that such dereliction of duty amounts to ineffective assistance only when counsel's performance is so egregious as to deprive the defendant of a fair trial. *Stuckey v. State,* 756 S.W.2d 587, 591[4] (Mo.App. 1988); *Tygart v. State,* 741 S.W.2d 830, 832–33[1, 2] (Mo.App.1987); *Brewster v. State,* 577 S.W.2d 911, 914[4] (Mo.App. 1979); *McConnell v. State,* 530 S.W.2d 43, 44[1, 2] (Mo.App.1975). Since *Strickland* was decided, other courts have indicated that ineffectiveness of counsel for failure to object to inadmissible evidence is a function of the strength of the prosecution's case. See, e.g., *Watson v. Marshall,* 784 F.2d 722, 726[4] (6th Cir.1985), cert. denied,

476 U.S. 1107, 106 S.Ct. 1955, 90 L.Ed.2d 363 (1986).

In this case the evidence of defendant's guilt was overwhelming. The State had evidence from Carl Matheney that the defendant shot Ricky Brooks while Brooks was standing beside Matheney. Matheney did not see the defendant's weapon clearly, and this fact was carefully brought out on cross-examination. The defendant volunteered the statement—to Sheriff Grissom—that he "drove all the way from Arkansas, [and] ended up shooting the wrong . . . man." The defendant was told that the investigating officers needed to recover the handgun which was used "because [they] didn't want a kid to get hold of it." The defendant replied that "he didn't give [his handgun] to nobody, but it was in a safe place and no kid was going to get hold of it." The day following the killing, the defendant, in the presence of police officers, told his family "not to lie to [Deputy Sheriff Turley] or try to cover for him; that he was not denying that he shot the man, but he didn't know why he shot him." The State had other, persuasive evidence of the defendant's guilt. If the motion court's findings of fact concerning the first point are a bit inaccurate—Sheriff Grissom did not testify at the trial—its conclusions of law are sound. It cannot reasonably be argued that but for counsel's failure to object to the testimony outlined in the defendant's brief the result of the trial would have been different. In our view, that conclusion is apparent from a review of the record; no evidentiary hearing was necessary. The ruling that counsel was not ineffective for the reasons assigned in point one of the defendant's brief must be affirmed.

Defendant further argues he was denied the effective assistance of counsel because the trial court sentenced him in the mistaken belief that he had committed two homicides when in fact he had been convicted of only one.

At the time allocution was granted and sentence was pronounced as required by Rule 29.07(b)(1), the trial court was urged to disregard the jury's recommendation and impose a sentence within the range of punishment provided by statute, not less than the punishment assessed by the jury, presumably pursuant to the provisions of § 557.036.3, RSMo 1978, as amended Laws of Mo.1981, p. 636. The trial court patiently heard argument that the defendant's punishment should be mitigated and then commented:

"Well nobody's said anything about the victim here, the young man, 33 years old, with children, who is no longer here. Nobody's said anything about society and the right to be protected, except Mr. Pruett did mention that.

This isn't the first death caused by Mr. Mannon. It is the second. Mr. Mannon has had two trials.

I think [I] will follow the jury's recommendation. Anything further?"

The defendant calls attention to the court's statement that he had had two trials—as he had—and asserts the court mistakenly believed he had been tried and convicted of two separate and distinct homicides. Defendant maintains he is entitled to an evidentiary hearing, or in the alternative to a remand for resentencing.

The point is speculative to the point of being contrived. At the time sentence was pronounced, the trial court had before it a presentence investigation report which clearly showed that in May 1970, the defendant had pled guilty to killing his wife of 20 years. The defendant received a suspended 5–year sentence. It is therefore not inaccurate to say that the defendant had caused more than one death. Moreover, the defendant had been tried twice. His first conviction was reversed, as we have noted. Our review of the record indicates that the trial court clearly understood the defendant's past criminal record, we find no merit in this point, and further discussion is not warranted.

Defendant's final point is that he received a sentence in excess of that authorized by law. He argues that this court should remand the cause with directions to vacate the sentence imposed and sentence the defendant under the provisions of § 558.011.1(1), RSMo 1978. The defen-

dant's argument was advanced but not decided when *Mannon v. State,* 727 S.W.2d 936, was submitted to this court. We do not agree with the defendant, but adequate consideration of the point requires that counsel's argument be set out in some detail.

As the defendant notes, he was charged with the commission of second-degree murder on March 1, 1980, in violation of § 565.004, RSMo 1978. As we have already observed, the defendant was found guilty by a jury and his punishment was assessed at imprisonment for a term of 30 years. On appeal, the conviction was reversed. On retrial a jury again found the defendant guilty of second-degree murder and he was sentenced to 50 years imprisonment as recommended by the jury.

The defendant correctly points out that at the time the crime was committed, March 1, 1980, the statute defining and denouncing second-degree murder, § 565.004, RSMo 1978, read as follows:

"All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree."

Section 565.008.2 stated the punishment for second-degree murder. The last sentence of § 565.008.2 provided:

"... Persons convicted of murder in the second degree shall be punished by imprisonment by the division of corrections for a term of not less than ten years."

The defendant earnestly argues that § 565.008.2, RSMo 1978, set only the lower limit of punishment for a conviction of second-degree murder, but because that subsection of the statute "... places no other parameters upon the allowable range of punishment," it must be read in conjunction with § 558.011.1(1), RSMo 1978, to supply that range of punishment. Counsel concedes that second-degree murder was not

specifically designated as a felony of any particular class when the defendant committed that offense in 1980. Nevertheless, it is argued, alternatively, that: a) even if second-degree murder was not designated a class A felony on March 1, 1980, the punishment provisions of § 558.011 should be utilized to supply the element of maximum punishment which was missing from § 565.008, or b) that the provisions of § 558.011, RSMo 1978, should be applied because pursuant to the provisions of § 557.021, RSMo 1978, second-degree murder could be deemed a felony and thus § 558.011 was directly applicable. In connection with this last argument, we are cited to *State v. Danforth,* 654 S.W.2d 912 (Mo.App.1983). Counsel also assures us that the "methodology" or rationale of *Hemphill v. State,* 566 S.W.2d 200 (Mo. banc 1978) and *State v. Stephens,* 507 S.W.2d 18 (Mo. banc 1974), either support her position or are factually distinguishable from the case at bar. Another argument is that § 558.011, RSMo 1978, was the functional equivalent of former § 546.490, RSMo 1969.[2]

The diffuseness of the defendant's argument makes it difficult to follow. As we understand the brief, however, the defendant's argument concerning the length of his sentence is based on two premises: 1) that a statute which prescribes the punishment for a crime must specifically state the maximum punishment allowable; 2) that for some reason not clearly articulated, the statute codified as § 558.011.1(1), RSMo 1978, properly construed, classified second-degree murder as a class A felony. With deference to able counsel, we do not agree with either premise.

■ We begin with the proposition that the penalty for an offense is that provided by statute at the time the offense was committed. *United States v. Fotto,* 103 F.Supp. 430, 431[1] (S.D.N.Y.1952); *State*

2. Which read: "Whenever any offender is declared by law punishable, upon conviction, by imprisonment in the penitentiary for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the offender may be sentenced to imprisonment during his natural life, or for any number of years not less than such as are prescribed; but no person shall in any case be sentenced to imprisonment in the penitentiary for any term less than two years."

*v. Lopez*, 107 Ariz. 90, 482 P.2d 457, 458 (banc 1971); *Kelsey v. State*, 194 Kan. 668, 400 P.2d 736, 738[1] (1965); 24B C.J.S. Criminal Law § 1982, p. 571 (1962). Of course, in this State it is provided by statute that any offender against the criminal laws of this State shall have the benefit of any reduction in the punishment prescribed for the offense by an amendment of the law creating the offense which becomes effective after the commission of the offense but before the final entry of judgment and sentence. Section 1.160, RSMo 1986; *Ex parte Wilson*, 330 Mo. 230, 233, 48 S.W.2d 919, 920 (banc 1932); *State v. Reiley*, 476 S.W.2d 473, 474 (Mo.1972). In this context, judgment and sentence is not considered to have been finally pronounced until the losing party has failed to appeal within the time allowed by law, or, having appealed, until the appeal is determined. *State v. Reiley*, 476 S.W.2d at 474. Diminution of the punishment by amendment of the statute creating the offense is not, however, an important consideration on this appeal. We first consider the defendant's assumption that a statute which prescribes the punishment for a crime must specifically state the maximum allowable punishment.

Looking to the law as it stood on March 1, 1980, § 565.004, RSMo 1978, declared that:

> "All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree."

Second-degree murder was (on March 1, 1980) a "non-code" offense. Laws of Mo. 1977 S.B. 60 (The Criminal Code) did not cover all the criminal laws of Missouri. The major areas omitted from S.B. 60 were the homicide offenses, narcotics offenses and weapons offenses. The New Missouri Criminal Code: A Manual for Court Related Personnel § 1.1, p. 1–1 (1978). Section 546.490, RSMo 1969, which we have set out marginally above, was specifically repealed. Second-degree murder was not redefined in 1977, but that part of the statute which had been encoded as the last sentence of § 559.009.3, RSMo Supp.1975, was repealed and replaced by the statute encoded as the second sentence of § 565.008.2, RSMo 1978. This left second-degree murder defined as it had been defined since 1879 and the punishment therefor fixed substantially as it had been fixed by § 559.030, RSMo 1969. There was no "cap," so to speak, on the punishment which might be assessed and the defendant insists we must look to § 558.011.1(1) to determine the maximum range of punishment which might be assessed.

■ A statute which fixes a minimum punishment but provides no maximum term is neither constitutionally invalid nor void because of indefiniteness. *United States v. Kuck*, 573 F.2d 25, 26–27[1][2] (10th Cir. 1978); *United States v. Greene*, 510 F.Supp. 128, 130[1][2] (E.D.Pa.1981). Such statutes leave the imposition of a sentence greater than the prescribed minimum to the trial court, subject to the constraints of the Eighth Amendment. *Binkley v. Hunter*, 170 F.2d 848, 849–50 (10th Cir.1948), cert. denied, 336 U.S. 926, 69 S.Ct. 645, 93 L.Ed. 1087, reh. denied, 336 U.S. 963, 69 S.Ct. 885, 93 L.Ed. 1115 (1949); *Ex parte Miller*, 23 Idaho 403, 129 P. 1075, 1076 (1913); 24B C.J.S. Criminal Law § 1982, p. 569. We do not say that such "open-ended" statutes are desirable; we hold only that the second sentence of § 565.008.2, RSMo 1978, was not invalid because no maximum term of imprisonment was specified. Neither do we find § 557.021.2, RSMo 1978, or § 557.021.3, RSMo 1978, determinative of the class to which the felony of second-degree murder belonged in March 1980. Section 557.021.2, RSMo 1978, provided that any offense defined outside the code which was declared to be a felony without specification of the penalty therefor was a class D felony. Section 565.004 did not specifically declare second-degree murder to be a felony without specifying the punishment therefor, although § 557.021.3 defined second-degree murder as a class A felony for the purpose of applying the extended term provisions of § 558.016 and for determining the penalty for attempts and conspiracies, as the court properly held in *State v. Danforth*, 654

S.W.2d 912. No extended term provisions were involved in this case, nor was the court called upon to determine the penalty for an attempt or conspiracy, as was the case in *Danforth.*

As to the sentence imposed by the trial court, we believe the controlling rule of law is the shopworn but generally sound principle that a specific statute prevails over a general statute, if they are inconsistent. *State v. Harris,* 337 Mo. 1052, 1058–59, 87 S.W.2d 1026, 1029–30[6][7] (1935). See generally E. Crawford, The Construction of Statutes § 230, p. 429–30 (1940); 24B C.J.S. Criminal Law § 1982, p. 569. Here we are dealing with two bills which were enacted at the same session by the 69th General Assembly in 1977. Laws of Mo.1977 S.B. 60 was The Criminal Code; that act constituted a sweeping general reform of our criminal law. Section 558.011 of the original code, Laws of Mo.1977, p. 669, prescribed punishments for all classes of crimes included in the Code. Section 4 of H.B. 90, Laws of Mo.1977, passed at the selfsame session as The Criminal Code, provided a penalty for all degrees of murder—capital murder, first-degree murder and second-degree murder. See Laws of Mo.1977, p. 720. It is a fundamental precept of statutory construction that the General Assembly is presumed to act with knowledge of the subject matter and existing law. *Bushell v. Schepp,* 613 S.W.2d 689, 692 (Mo.App.1981). In light of these general principles, we conclude that the General Assembly intended § 558.011, with the single exception noted, to be a general statute prescribing punishment for all code offenses and that it intended Section 4, H.B. 90, Laws of Mo.1977, codified as § 565.008, to be a specific statute prescribing the penalty for murder. Such is the proper construction of the statutes in effect when the homicide charged was committed.

██  We have, of course, been addressing statutes which have several times been amended. The question remains whether the provisions of Laws of Mo.1983, p. 927, codified as § 565.021, RSMo Supp.1983, operated to meliorate the permissible term of imprisonment in this case. Section 565.021, RSMo Supp.1983, redefined second-degree murder and specifically denominated that crime as a class A felony. Section 558.011.-1(1), RSMo Supp.1983, provided that the authorized terms of imprisonment for commission of a class A felony were a term of years not less than 10 years and not to exceed 30 years, or life imprisonment. Is the defendant entitled to have his sentence reduced to 30 years on the ground that he is entitled to the benefit of any reduction in any punishment prescribed for the offense by an amendment of the law creating the offense which became effective after the commission of the offense but before the final entry of judgment and sentence? We think not. The date of final judgment and sentence was February 17, 1984, the date of issuance of our mandate. See *State v. Reiley, supra,* 476 S.W.2d at 474. However, the statute codified as § 565.021, RSMo Supp.1983, had not become effective on February 17, 1984, and in any event § 565.001.2, RSMo Supp.1983, now § 565.001.2, RSMo 1986, exempts prosecutions for homicide commenced before the effective date of present Chapter 565 from the operation of § 1.160. The defendant's sentence is within the limits prescribed by the law in effect when the defendant was finally sentenced, and his third point is without merit. No error appears for any reason advanced in this court and accordingly the judgment is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.